Kerry GUTHERY, Appellant,

v.

Earnest B. TAYLOR, in his Official Capacity as Chief of Police of the Sugar Land Police Department, and the City of Sugar Land, Appellees.

No. 14–02–00743–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 17, 2003.

Gregory B. Cagle, League City, for appellants.

Meredith Rene Riede, Sugar Land, for appellees.

Panel consists of Justices JOHN S. ANDERSON, SEYMORE, and GUZMAN.

## OPINION

JOHN S. ANDERSON, Justice.

This police disciplinary case requires the court to construe Texas Government Code sections 614.022 and 614.023, which apply only to those police officers who are not covered by a civil service statute. TEX. GOV'T CODE ANN. § 614.021(3) (Vernon 1994). Section 614.022 provides: "To be considered by the head of a ... police department, the complaint must be: (1) in writing; and (2) signed by the person making the complaint." TEX. GOV'T CODE ANN. § 614.022 (Vernon 1994). Section 614.023 provides:

(a) A copy of a signed complaint against a law enforcement officer, fire fighter, or police officer shall be given to the officer or employee within a reasonable time after the complaint is filed.

(b) Disciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the officer or employee.

TEX. GOV'T CODE ANN. § 614.023 (Vernon 1994).

The case arises because appellant, Kerry Guthery, received a disciplinary suspension based on an investigation stemming from a citizen's complaint. Guthery subsequently filed suit in the trial court, seeking a declaratory judgment delineating his rights under sections 614.022 and 614.023. Guthery also sought injunctive relief, or, alternatively, a writ of mandamus to compel Sugar Land Police Chief Earnest B. Taylor, in his capacity of Chief of Police, and the City of Sugar Land, appellees, to withdraw the disciplinary action taken against him and to restore his back pay and benefits.

The parties filed cross-motions for summary judgment, urging competing interpretations of the statutes at issue. The trial court granted appellees' motion and denied Guthery's motion, ordering that he take nothing.

We reverse the summary judgment in favor of appellees and render judgment in favor of Guthery (1) declaring appellees' actions violated sections 614.022 and 614.023, and (2) ordering appellees to withdraw the disciplinary action and restore Guthery's back pay and benefits.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

On January 29, 2000, Guthery, a police officer, decided to disperse a party at 55 Ashbury Park. He knocked on the front door with his flashlight, damaging the door. On February 2, 2000, Mrs. Scraper, a citizen, telephoned the Sugar Land Police Department ("SLPD"), complaining an officer had damaged her door on January 29, 2000.

SLPD determined Guthery was the only officer at Scraper's house that night. After reviewing the incident report, Guthery's supervisor made notes on the report and returned it to Guthery to obtain more information about how the damage might have occurred.[2] Guthery responded to the questions that day in an e-mail.[3] After receiving Guthery's answers, the SLPD's Professional Standards Division investigated the incident to determine whether any state laws or city policies had been violated. The investigation included meeting with Mrs. Scraper at her residence and photographing the damage. Additionally, Guthery supplied a written statement of the incident and was asked to provide a copy of the audio tape from that night. Guthery, however, was unable to provide an audio tape from that night because he failed to record this particular event.

The SLPD Professional Standards Division investigated the complaint as possible violations of state criminal law and city policies. During the investigation, there were multiple allegations against Guthery. The investigators ultimately concluded Guthery caused damage to Scraper's front door when he struck it several times with his flashlight, denting the wood surface and causing a panel of glass to break. The investigators also determined that Guthery failed to activate his tape recorder during the incident.

Police Chief Taylor reviewed the investigation report, and Guthery received a "Notice of Proposed Disciplinary Action" ("Notice") on April 7, 2000. Chief Taylor's proposal to suspend Guthery for three days was included in the Notice, and Taylor requested Guthery to appear at a meeting on April 13, 2000, in order to respond.[4]

1. We derive the factual background not only from the summary judgment proof presented, but also from the pleadings. We recognize facts asserted in the pleadings are not competent summary judgment evidence. See Laidlaw Waste Sys., Inc. v. City of Wilmer, 904 S.W.2d 656, 661 (Tex.1995). Nevertheless, both parties concede the facts are undisputed and refer to factual assertions alleged in the pleadings.

2. The note read as follows: "Homeowner claims her front door was damaged. Kids claim Officer Guthery beat on the front door, but they wouldn't answer. Inference is being made that the Officer damaged the door. Lt. Lund wants the following answered." Lund wanted to know how Guthery knew the defendant's cup contained beer, why Guthery was at the residence, how the defendant was identified, and what happened when Guthery went to the front door. When Officer Webster presented the report to Guthery, Guthery was told there was no complaint, but the questions needed to be answered for clarification purposes.

3. Prior to answering the questions, Guthery asserted his Garrity rights against compelled self-incrimination. See Garrity v. New Jersey, 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967) (holding Fourteenth Amendment protection against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office and prohibition extends to all, regardless of whether they are policemen or members of body politic).

4. The suspension was to run from April 27, 2000, through April 29, 2000. The rules Guthery was accused of violating were "SLPD Rule # 1 Conduct Unbecoming to a Police Employee" and "Chapter 30, Directive 2—Recording Devices." Guthery was to be suspended for causing damage to Mrs. Scraper's front door and for failing to tape record the incident on January 29, 2000.

The Notice was signed by Chief Taylor. After meeting with Guthery on April 13, 2000, Chief Taylor approved the suspension. Guthery appealed the disciplinary action to the City's Employees Board of Appeals, and after a hearing, the board reduced the suspension to one day.

Guthery then filed a petition for writ of mandamus, asking the trial court to direct Chief Taylor to withdraw the disciplinary action because it was imposed in violation of Texas Government Code section 614.023(b), and to award Guthery full back pay and benefits lost as a result of the disciplinary action. Additionally, Guthery sought to recover all attorney's fees incurred. Guthery subsequently amended his original petition and added the City of Sugar Land as a defendant. Further, he sought relief under the Uniform Declaratory Judgments Act, asking the court to declare the acts of the defendants to be in violation of the Texas Government Code.[5]

Guthery and appellees filed cross-motions for summary judgment, setting forth competing constructions of Texas Government Code sections 614.022 and 614.023. Guthery argued appellees' actions violated section 614.022 because there was no written and signed complaint from Mrs. Scraper, the owner of the residence where the damage occurred. Guthery also argued appellees could not rely on the Notice because it included the discipline to be imposed, was delivered after conclusion of the investigation and was not signed by Scraper. Guthery noted, "at the conclusion of the investigation would not be 'within a reasonable time after the complaint is filed' as required by [section 614.023(a) ]."

Appellees' motion for summary judgment was based on the following: (1) compliance with sections 614.022 and 614.023 is not mandatory; and, in the alternative, (2) the procedures taken by appellees did comply with these sections. Appellees urged the court to find that Mrs. Scraper's signature was not statutorily required on the complaint, and that Chief Taylor's signature was sufficient because he was the officer who charged Guthery and proposed disciplinary action. Appellees also argued the Notice given to Guthery at the completion of the investigation and before any disciplinary actions were taken was proper.

Following a hearing, the trial court granted appellees' motion and denied Guthery's motion. The trial court ordered Guthery take nothing on his claims and causes of action against appellees.

## ISSUES PRESENTED

■ Guthery raises two issues on appeal. In issue one, he argues, "A copy of the signed complaint was not given to [Guthery] within a reasonable time after it was filed and before disciplinary action was taken and the determination of 'reasonable' is for the fact finder." In issue two, he argues, Chief Taylor "considered a complaint against a police officer ... which was not in writing and signed by the complainant as required by [Texas Government Code section 614.022]." As part of issue two, Guthery reiterates his argument that Chief Taylor did not provide him with a copy of the signed complaint within a reasonable time.

In response to issue one, appellees argue that determination of "reasonable time" is a question of law. In response to issue two, they argue the "complaint" that must be signed in the present case was the "Notice of Proposed Disciplinary Action," not Scraper's complaint. They also argue the complaint was given to Guthery "with-

5. *See* Tex. Civ. Prac. & Rem.Code Ann.    §§ 37.001–.011 (Vernon 1997 & Supp.2003).

in a reasonable time" because it was given to him before Chief Taylor took disciplinary action against Guthery.

Thus, the controlling issue is one of statutory construction: under the facts of this case, does the Notice suffice as the "complaint" which must be signed and in writing, and given to the officer "within a reasonable time," under Texas Government Code sections 614.022 and 614.023? Only if we determine the Notice suffices as the "complaint" must we decide whether the Notice was given to Guthery "within a reasonable time." Accordingly, after setting forth the standard of review, we begin by addressing Guthery's issue two.

## STANDARD OF REVIEW AND NATURE OF JUDGMENT SOUGHT

■ The parties do not dispute the relevant facts. Therefore, this is a proper case for summary judgment. *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 356 (Tex.2000). When, as here, parties file cross-motions for summary judgment, each party bears the burden of establishing it is entitled to judgment as a matter of law. *Id.* When the trial court grants one party's motion for summary judgment and denies the other, we review both motions; and, if we find the trial court erred, we will reverse and render the judgment the trial court should have rendered. *Id.; Bradley v. State ex rel. White,* 990 S.W.2d 245, 247 (Tex.1999). Generally, matters of statutory construction are legal questions, subject to de novo review. *See State Dep't of Highways & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002).

■ An original proceeding for a writ of mandamus initiated in the trial court is a civil action subject to trial and appeal on substantive law issues and rules of procedure as any other civil suit. *Anderson v.* *City of Seven Points,* 806 S.W.2d 791, 792 n. 1 (Tex.1991). A writ of mandamus will issue to compel a public official to perform a ministerial act. *Id.* at 793. An act is ministerial when the law clearly delineates the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion. *Id.* A writ of mandamus will not issue to compel a public official to perform an act which involves an exercise of discretion. *Id.* There is one exception: a writ of mandamus may issue in a proper case to correct a clear abuse of discretion by a public official. *Id.* When a statute delineates the act an official is to perform with sufficient certainty so nothing is left to the exercise of discretion, the case involves only performance of a ministerial act, and is subject to mandamus. *See id.*

■ Under the Uniform Declaratory Judgments Act, a person whose rights are affected by a statute may have a court determine any question of construction arising under the statute and may obtain a declaration of his rights under the same. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 37.002, .004 (Vernon 1997). We review declaratory judgments under the same standards as other judgments and decrees. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.010 (Vernon 1997); *City of Galveston v. Giles,* 902 S.W.2d 167, 170 (Tex.App.-Houston [1st Dist.] 1995, no writ). We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *Giles,* 902 S.W.2d at 170. Here, because the trial court resolved the case on competing motions for summary judgment in the face of undisputed facts, we review the propriety of the trial court's denial of the declaratory judgment under the same standards we apply to the summary judgment. *See Unauthorized Practice of Law Comm. v. Jansen,* 816 S.W.2d 813, 814 (Tex.App.-Houston

[14th Dist.] 1991, writ denied) (case submitted on agreed stipulation of facts and motion for summary judgment).

## DISCUSSION

Texas Government Code section 614.022 provides, "To be considered by the head of a ... police department, the complaint must be: (1) in writing; and (2) signed by the person making the complaint." TEX. GOV'T CODE ANN. § 614.022 (Vernon 1994). It is undisputed that Chief Taylor is the head of the SLPD. It is undisputed that the investigation of Guthery arose from an incident brought to the attention of the Sugar Land Police when a citizen called to report damage to her door. It is also undisputed that the citizen never provided SLPD or Chief Taylor with a written and signed complaint. Finally, it is undisputed that Chief Taylor signed the "Notice of Proposed Discipline," which Guthery received on April 7, 2000, six days before he met with Chief Taylor. We must therefore decide whether, as appellees argue, the Notice suffices as the written and signed complaint required by section 614.022.

■ A court's objective in construing a statute is to determine and give effect to the legislature's intent. *Tex–Air Helicopters, Inc. v. Galveston County Appraisal Review Bd.*, 76 S.W.3d 575, 581 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). We presume the legislature intended the plain meaning of the words it used. *Id.* If possible, we must ascertain the legislature's intent from the language of the statute and not resort to extraneous matters for an intent not stated in the statute. *Id.* When interpreting a statute, we consider the entire act, its nature and object, and the consequence that would follow from each construction. *Id.* We must reject any

statutory interpretation that defeats the legislative purpose. *Id.* In interpreting the provisions of the Government Code in question, we may look to the Code Construction Act for assistance. *See* TEX. GOV'T CODE ANN. § 1.002 (Vernon 1988) (stating Code Construction Act applies to construction of each provision of the Code, except as otherwise provided); TEX. GOV'T CODE ANN. § 311.002 (Vernon 1998) (stating chapter applies to each code enacted by 60th or subsequent legislature as part of state's continuing statutory revision program).

In interpreting the statute, we may consider the title or caption. *See* TEX. GOV'T CODE ANN. § 311.023(7) (Vernon 1998); *Southwestern Bell Tel. Co. v. Houston Indep. Sch. Dist.*, 397 S.W.2d 419, 421–22 (Tex.1965). Section 614.022 is captioned: "Complaint to be in Writing and Signed by Complainant." TEX. GOV'T CODE ANN. § 614.022 (Vernon 1994).[6] Neither complaint nor complainant is defined in sections 614.022 and 614.023.

■ Nevertheless, "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." TEX. GOV'T CODE ANN. § 311.011(b) (Vernon 1998); *see Deltenre v. State*, 808 S.W.2d 97, 101 (Tex.Crim. App.1991) (concluding the term "peace officer" has acquired technical meaning by legislative definition). Moreover, when construing a statutory word or phrase, a court may take into consideration the meaning of the same or similar language used elsewhere in the act or in another act of similar nature. *L & M-Surco Mfg., Inc. v. Winn Tile Co.*, 580 S.W.2d 920, 926 (Tex.Civ.App.-Tyler 1979, writ dism'd). When the same or a similar term is used in

---

6. This caption was added when the statute was codified in the Government Code. *See* Act of May 4, 1993, 73rd Leg., R.S., ch. 268, § 1, sec. 614.022, 1993 Tex. Gen. Laws 583, 679.

the same connection in different statutes, the term will be given the same meaning in one as in the other, unless there is something to indicate that a different meaning was intended. *Id.*[7]

"Complainant" is defined in Local Government Code Section 143.123, as "a person claiming to be the victim of misconduct by a fire fighter or police officer." TEX. LOC. GOV'T CODE ANN. § 143.123(a)(1) (Vernon 1999).[8] Section 143.123(f) also provides in relevant part:

> *An investigator may not conduct an interrogation of a fire fighter or police officer based on a complaint by a complainant who is not a peace officer unless the complainant verifies the complaint in writing before a public officer who is authorized by law to take statements under oath.* In an investigation authorized under this subsection, an investigator may interrogate a fire fighter or police officer about events or conduct reported by a witness who is not a complainant without disclosing the name of the witness. Not later than the 48th hour before the hour on which an investigator begins to interrogate a fire fighter or police officer regarding an allegation based on a complaint, affidavit, or statement, the investigator shall give the fire fighter

or police officer a copy of the affidavit, complaint, or statement. An interrogation may be based on a complaint from an anonymous complainant if the departmental employee receiving the anonymous complaint certifies in writing, under oath, that the complaint was anonymous. This subsection does not apply to an on-the-scene investigation that occurs immediately after an incident being investigated if the limitations of this subsection would unreasonably hinder the essential purpose of the investigation or interrogation. If the limitation would hinder the investigation or interrogation, the fire fighter or police officer under investigation must be furnished, as soon as practicable, a written statement of the nature of the investigation, the name of each complaining party, and the complaint, affidavit, or statement.

TEX. LOC. GOV'T CODE ANN. § 143.123(f) (Vernon 1999) (emphasis added).[9]

Thus, like Government Code section 614.022, Local Government Code section 143.123(f) contains a requirement that the complaint be in writing. A signature is implicitly required because the complaint must be verified. The two sections appear to be of similar nature.

---

7. The court continued, "This rule applies with particular force where the meaning of a word as used in one act is clear or has been judicially determined, and the same word is subsequently used in another act pertaining to the same subject." *L & M-Surco Mfg., Inc. v. Winn Tile Co.*, 580 S.W.2d 920, 926 (Tex.Civ. App.-Tyler 1979, writ dism'd). As discussed below, we find the definition of "complainant" in a subsequently enacted statute. Nevertheless, given the relationship between the two statutes, we apply the rule stated in *L & M-Surco*.

8. Texas Local Government Code section 143.312(b)(1) also contains the identical definition of "complainant." TEX. LOC. GOV'T CODE

ANN. § 143.312(b)(1) (Vernon 1999). The subchapter of which the section is a part applies to municipalities with populations of 460,000 or more that operate under a city manager form of government. TEX. LOC. GOV'T CODE ANN. § 143.301 (Vernon 1999).

9. Texas Local Government Code section 143.312(g) contains a similar provision prohibiting interrogation "based on a complaint by a complainant who is not a fire fighter or a police officer unless the complainant verifies the complaint in writing before a public officer who is authorized by law to take statements under oath." TEX. LOC. GOV'T CODE ANN. § 143.312(g) (Vernon 1999).

Section 143.123 is part of the Fire Fighter and Police Officer Civil Service Act ("CSA"). *See Klinger v. City of San Angelo,* 902 S.W.2d 669, 671 (Tex.App.-Austin 1995, writ denied). The purpose of the CSA is to "to secure efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public servants." TEX. LOC. GOV'T CODE ANN. § 143.001(a) (Vernon 1999); *Klinger,* 902 S.W.2d at 671. The purpose underlying Local Government Code section 142.123 is not inconsistent with the apparent purpose of Government Code section 614.022.

Finally, the legislative history of section 614.022 suggests the similar nature of the two sections. Section 614.022 was created in 1969, and originated as Senate Bill 148. *See* Act of May 16, 1969, 61st Leg., R.S., ch. 407, § 1, 1969 Tex. Gen. Laws 1333. As originally drafted, Senate Bill 148 was intended to amend Texas Revised Civil Statutes Article 1269m, the Firemen's and Policemen's Civil Service Act, *i.e.,* the precursor of present Local Government Code section 142.123. *See* HOUSE COMM. ON URBAN AFFAIRS, BILL ANALYSIS, Tex. S.B. 148, 61st Leg., R.S. (1969); *see also* original bill draft in BILL FILE, Tex. S.B. 148, 61st Leg., R.S. (1969).[10] The Senate Committee on Jurisprudence, however, reported the bill adversely and substituted its own version, which did not contain any reference to Article 1269m or the Firemen's and Policemen's Civil Service Act. *See* "Committee Substitute for Senate Bill 148" in BILL FILE, Tex. S.B. 148. The Committee Substitute version was passed and ultimately became Texas Revised Civil Statute Article 6252–20, which was subsequently codi-

fied in Texas Government Code sections 614.021–614.023. *See* Act of May 4, 1993, 73rd Leg., R.S., ch. 268, § 1, secs. 614.021–.023, 1993 Tex. Gen. Laws 583, 678–79.

Given what appears to be the similar nature of sections 141.123 and 614.022, and considering the definition of "complainant" in section 141.123(a)(1) as the "victim of misconduct," we construe the "complaint" that must be signed and in writing to be the victim's complaint, in this case Mrs. Scraper's. Thus, the "Notice of Proposed Disciplinary Action" provided by Chief Taylor to Guthery does not suffice as the "complaint" which must be signed and in writing, and given to the officer "within a reasonable time," as required by Texas Government Code sections 614.022 and 614.023.[11]

In support of their position the Notice fulfilled the requirements of sections 614.022 and 614.023., appellees direct our attention to *Fudge v. Haggar,* 621 S.W.2d 196 (Tex.Civ.App.-Texarkana 1981, writ ref'd n.r.e.). In *Fudge,* the appellate court concluded a letter of complaint provided to a police officer at the conclusion of an internal affairs investigation satisfied the requirements of former Texas Revised Civil Statute 6252–20 even though the investigation was prompted by a call from outside the police department. *Id.* at 198.

*Fudge,* however, is distinguishable. In *Fudge,* a member of the Dallas County Sheriff's Department called a Dallas Police Department internal affairs investigator to complain that Fudge, a patrolman with the Dallas Police Department, had engaged in improper conduct in obtaining the release of a prisoner. *Id.* at 197. James, the

---

**10.** The Bill File is available from the Texas State Library and Archives Commission.

**11.** We also note that adopting appellees' interpretation would result in an officer's being

disciplined based on another officer's hearsay characterization of a citizen's complaint, as opposed to the actual content of the complaint itself.

internal affairs investigator, took affidavits from two pretrial release employees and made a special written report to the chief of police concerning the improper conduct. *Id.* James also wrote an official letter of complaint, presented it to Fudge, and showed Fudge the affidavits. *Id.* Fudge then complied with an instruction to prepare a written response to the complaint. *Id.* Subsequently, the chief of police discharged Fudge for the conduct that was the subject of the letter of complaint. *Id.*

The appellate court reasoned:

In this case we deal with an internally generated complaint. Even though the initial information received by the police department was external, coming from the Dallas County Sheriff's Office, the entire investigation began within the police department. Officer James testified that on October 19, 1979, he gave Fudge his letter of complaint and affidavits concerning all three incidents. He directed Fudge to respond to the specific acts of misconduct and Fudge did so on that day. The appellees argue that Fudge was aware of, understood, and replied to each of the charges of misconduct for which he was discharged and that the complaint against him was valid. We agree. The complaint was in writing, signed by the person making the complaint, and presented to the affected officer, Robert Fudge, prior to the taking of disciplinary action. It was in compliance with Tex.Rev.Civ. Stat. Ann. art. 6252–20....

*Id.* at 198.

Thus, the *Fudge* court addressed a situation in which an internal investigation produced a complaint supported by signed affidavits, and the court held such a complaint complied with the precursor statute to sections 614.022 and 614.023. In the present case, however, we only have Chief Taylor's Notice to Guthery, charging Guth-ery with the violations. Guthery was not presented with an affidavit from Mrs. Scraper or anything signed by her. There is nothing to indicate Guthery was presented with affidavits from any other witnesses or presented with the internal affairs report. On the facts before us, we conclude the procedure in the present case was not in compliance with Texas Government Code sections 614.022 and 614.023. We now turn to the appropriate remedy.

Section 614.023(b) provides that "[d]isciplinary action *may not* be taken against the officer ... unless a copy of the signed complaint is given to the officer or employee." TEX. GOV'T CODE ANN. § 614.023(b) (Vernon 1994) (emphasis added). " 'May not' imposes a prohibition and is synonymous with 'shall not.' " TEX. GOV'T CODE ANN. § 311.016(5) (Vernon 1998). Under the undisputed facts of this case, we hold Chief Taylor had a clear duty to refrain from taking disciplinary action against Guthery when the only "complaint" offered to satisfy sections 614.022 and 614.023 was the Chief's "Notice of Proposed Disciplinary Action."

We sustain Guthery's issue two. Because we sustain Guthery's issue two, it is not necessary to address issue one, by which he argues he did not receive the "complaint" within a reasonable time.

## CONCLUSION

We reverse the summary judgment in favor of appellees and render judgment in favor of Guthery (1) declaring appellees' actions violated Texas Government Code sections 614.022 and 614.023, and (2) ordering appellees withdraw the disciplinary action and restore Guthery's back pay and benefits.