TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00086-CV






Appellant, Cristina L. Treadway// Cross-Appellants, Sheriff James R. Holder 

and Comal County, Texas


v.


Appellees, Sheriff James R. Holder and Comal County, Texas// Cross-Appellee,
Cristina L. Treadway 






FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT

NO. C2006-0918A, HONORABLE RONALD G. CARR, JUDGE PRESIDING





O P I N I O N


 Appellant Cristina Treadway appeals from the trial court's order granting summary
judgment in favor of appellees Sheriff James Holder and Comal County (collectively, "the County")
in her suit for declaratory and mandamus relief. The County cross-appeals, arguing that the trial
court erred in denying its request for attorney's fees. We reverse the trial court's order granting
summary judgment and remand for further proceedings. We affirm the trial court's denial of the
County's request for attorney's fees.


DISCUSSION

 Treadway began employment with the Comal County Sheriff's Office in
February 1994, serving as a corrections officer at the county jail. She was promoted to the rank of
corporal, and again to the rank of sergeant, before moving into the position of administrative
sergeant in October 2001.

 In late December 2005, Jeff Paullus, the lieutenant in the jail division of the sheriff's
office and Treadway's supervisor, received a complaint from a shift sergeant that Treadway had met
with a trainee, Jason Cline, only twice that month despite a requirement that she meet with him
weekly. In response to this allegation, Treadway claimed that she had met with Cline four times that
month, providing copies of weekly observation reports to confirm her statement. Paullus then
reviewed the applicable employee time sheets and jail camera footage, and ultimately concluded that
Treadway had not met with the trainee each week as required, and that she had fabricated the
observation reports. On February 13, 2006, Sheriff Holder ordered Treadway's termination. The
County maintains that Treadway was not terminated for failing to meet with a trainee on a weekly
basis, but for falsifying government documents and lying in the course of an investigation. 
According to Treadway, she learned about the allegations of her untruthfulness or falsification of
government records for the first time from the County's legal counsel after her discharge, and she
never received a signed, written complaint regarding these allegations.

 Treadway filed suit against the County, seeking a declaration that the County violated
chapter 614, subchapter B of the government code (hereinafter, "Subchapter B") in terminating her. 
See Tex. Gov't Code Ann. §§ 614.021-.023 (West Supp. 2009). Subchapter B pertains to complaints
against peace officers and describes procedures that must be followed before disciplinary action may
be taken. See id. The parties filed cross motions for summary judgment, and on October 19, 2007,
the trial court granted the County's motion and denied Treadway's motion. On February 7, 2008,
the trial court entered a take-nothing judgment in favor of the County, but denied the County's
request for attorneys' fees. This appeal and cross-appeal followed.

 

STANDARD OF REVIEW

 Summary judgments are reviewed de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). The issues raised in this appeal involve statutory construction,
which is also subject to de novo review. City of Rockwall v. Hughes, 246 S.W.3d 621, 625
(Tex. 2008). In determining the legislature's intent in enacting a statute, courts should look to the
plain meaning of the words used in the statute. See Fireman's Fund County Mut. Ins. Co. v. Hidi,
13 S.W.3d 767, 768-69 (Tex. 2000). We presume that every word was deliberately chosen and that
excluded words were intentionally excluded. Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535,
540 (Tex. 1981). 

 

DISCUSSION

 In a single issue on appeal, Treadway argues that the trial court erred in granting the
County's motion for summary judgment on the ground that the requirements of Subchapter B do not
apply to her termination because it was not based on a "complaint" as contemplated by the statute.

 The County concedes that Treadway is a law enforcement officer subject to
Subchapter B. See Tex. Gov't Code Ann. § 614.021. Subchapter B provides as follows:


SUBCHAPTER B. COMPLAINT AGAINST LAW ENFORCEMENT OFFICER
OR FIRE FIGHTER


§ 614.021. Applicability of Subchapter 


. . . .


§ 614.022. Complaint to be in Writing and Signed by Complainant


To be considered by the head of a state agency or by the head of a fire department or
local law enforcement agency, the complaint must be:


 (1) in writing; and


 (2) signed by the person making the complaint.


§ 614.023. Copy of Complaint to be Given to Officer or Employee


a) A copy of a signed complaint against a law enforcement officer of this state or a
fire fighter, detention officer, county jailer, or peace officer appointed or employed
by a political subdivision of this state shall be given to the officer or employee within
a reasonable time after the complaint is filed.

 

(b) Disciplinary action may not be taken against the officer or employee unless a
copy of the signed complaint is given to the officer or employee.


(c) In addition to the requirement of Subsection (b), the officer or employee may not
be indefinitely suspended or terminated from employment based on the subject
matter of the complaint unless:


 (1) the complaint is investigated; and


 (2) there is evidence to prove the allegation of misconduct.



Id. §§ 614.021-.023.

 Treadway contends that the County violated Subchapter B in terminating her because
she did not receive a copy of a signed complaint regarding her alleged dishonesty and falsifying of
government documents prior to her termination. In response, the County argues that Subchapter B
does not apply to Treadway's termination because she was not terminated on the basis of a
"complaint." Accordingly, this appeal turns on the question of whether the internal allegations
leading to Treadway's termination constitute a "complaint" under Subchapter B. 

 The County argues that Subchapter B cannot be construed to apply to allegations
made against an officer by his or her supervisors because to do so would alter the employment at-will
status of peace officers in Texas. The long-standing rule in Texas is that absent a specific agreement
to the contrary, employment may be terminated by the employer or the employee at will "for good
cause, bad cause, or no cause at all." See Montgomery County Hosp. Dist. v. Brown, 965 S.W.2d
501, 502 (Tex. 1998). At-will employment may be modified by contract or by express rules or
policies. See County of Dallas v. Wiland, 216 S.W.3d 344, 348 (Tex. 2007); see also Muncy v. City
of Dallas, 335 F.3d 394, 398 (5th Cir. 2003) (stating that at-will status may be abrogated by "statute,
rule, handbook, or policy which limits the condition under which the employment may be
terminated"). While the County emphasizes the at-will status of peace officers in Texas, we need
not address any effect Subchapter B might have on at-will employment because it is undisputed that
Treadway was terminated for cause. The issue, then, is not whether she could have been terminated
without cause, but whether the cause for which she was terminated--lying to a supervisor and
falsifying training documents--resulted from a "complaint" that triggers the requirements of
Subchapter B.

 Subchapter B, while requiring complaints to be in writing and signed by the
complainant, does not define "complaint." See Tex. Gov't Code Ann. §§ 614.021-.023. Given the
lack of definitions in Subchapter B itself, at least one court of appeals has found guidance in
interpreting Subchapter B by looking to the Fire Fighter and Police Officer Civil Service Act (the
"Civil Service Act"), Tex. Loc. Gov't Code Ann. §§ 143.001-.363 (West 2008 & Supp. 2009). See
Guthery v. Taylor, 112 S.W.3d 715, 723 (Tex. App.--Houston [14th Dist.] 2003, no pet.). The Civil
Service Act, which applies to certain municipal fire fighters and police officers, was enacted in order
to "secure efficient fire and police departments composed of capable personnel who are free from
political influence and who have permanent employment tenure as public servants." Id. § 143.001. 
Section 143.123 of the Civil Service Act governs the interrogation of a fire fighter or police officer
in the course of an investigation that might result in punitive action against that person. See id.
§ 143.123. After observing the "similar nature" of section 143.123 and Subchapter B in both
purpose and legislative history, the court in Guthery held that the definition of "complainant" found
in section 143.123 was equally applicable to Subchapter B. 112 S.W.3d at 723. (1) 

 Like the court in Guthery, we look to section 143.123 of the Civil Service Act for
guidance in interpreting Subsection B. An investigation under section 143.123 is triggered by a
complaint. See Tex. Loc. Gov't Code Ann. § 143.123(f). While "complaint" is not defined, the
statute specifically provides that an interrogation may not be conducted "based on a complaint by
a complainant who is not a peace officer" unless the complaint is verified. Id. This specific
provision applying only to complaints by non-peace-officers suggests that in the absence of such
qualifying language, the term "complaint" includes internal complaints by other officers. The
requirement of a verified written complaint in this context is the only aspect of section 143.123 that
differentiates complaints by citizens from internally generated complaints. The statute also provides
that a complainant may not also be assigned to conduct an investigation into the complaint, further
supporting the notion that the legislature did not intend the term "complaint" to be limited to external
citizen complaints. See id. § 143.123(e).

 Furthermore, section 143.123 defines "investigation" as "an administrative
investigation, conducted by the municipality, of alleged misconduct by a fire fighter or police officer
that could result in punitive action against that person." This definition of "investigation" could be
equally applied to an investigation of allegations of misconduct by a citizen, or to an investigation
of internal allegations by an officer's supervisor. There is no indication that the legislature intended
to create a distinction.

 Similarly, the language of Subchapter B states that an officer may not be suspended
or terminated as the result of a complaint unless "the complaint is investigated" and "there is
evidence to prove the allegation of misconduct." Tex. Gov't Code Ann. § 614.023(c). 
Consequently, it appears that under both the Civil Service Act and Subchapter B, a "complaint"
triggers an investigation into allegations of misconduct. Compare Tex. Loc. Gov't Code Ann.
§ 143.123(a)(2) with Tex. Gov't Code Ann. § 614.023(c). Neither statute makes any distinction
based on the source of the allegations. Therefore, it necessarily follows that a "complaint" for
purposes of Subchapter B is any allegation of misconduct that could result in disciplinary action.

 Under this definition, the allegations against Treadway--dishonesty and falsifying
training records--qualify as a complaint. The fact that these allegations were made by Treadway's
supervisors is immaterial. Rather, the relevant facts are that there were allegations of misconduct,
and that these allegations led to Treadway's termination. In requiring that there be an investigation
and evidence to prove allegations of misconduct before an officer can be terminated, Subchapter B
makes no exception for allegations by an officer's supervisors. See Tex. Gov't Code Ann.
§ 614.023(c). Because every word excluded from a statute is presumed to have been excluded for
a purpose, we cannot read additional language into the statute to create such an exception. See
Cameron, 618 S.W.2d at 540. Under the plain language of section 614.023, any "allegation of
misconduct" for which disciplinary action may be imposed represents a complaint, regardless of the
source. See Tex. Gov't Code Ann. § 614.023. 

 Our conclusion that a "complaint" for purposes of Subchapter B includes any
allegation of misconduct that could give rise to disciplinary action is consistent with the purpose of
the statute as described in Turner v. Perry, 278 S.W.3d 806, 823 (Tex. App.--Houston [14th Dist.]
2009, pet. filed). The court in Turner stated:


By enacting [Subchapter B], the State provided covered employees with procedural
safeguards to reduce the risk that adverse employment actions would be based on
unsubstantiated complaints. Moreover, the State determined that the value of these
protections outweighs the fiscal and administrative burdens incurred by complying
with statutory requirements. 

Id.


 The court went on to hold that by failing to provide proper documentation of the
complaints against an officer before terminating him, the officer's employer "impaired [his] ability
to investigate or defend against the complaints made against him." Id. 

 Here too, Treadway's "ability to investigate or defend against the complaints made
against h[er]" was impaired by the County's failure to provide her with a written, signed complaint
prior to her termination. Id. The legislature enacted Subchapter B to protect peace officers from
disciplinary action based on unsubstantiated allegations of misconduct. See id. Because we must
construe the statute as written, we decline to judicially create an exception for allegations coming
from an officer's supervisors.

 Furthermore, the definition of "complaint" under Subchapter B has previously been
applied to internal complaints. See Fudge v. Haggar, 621 S.W.2d 196, 198 (Tex. App.--Texarkana
1981, writ ref'd n.r.e.); see also Op. Tex. Att'y Gen. No. GA-0251 (2004). In Fudge, the court held
that a police department properly complied with the predecessor statute to Subchapter B by
presenting a terminated officer with a letter of complaint, signed by his supervisor, prior to
terminating him. 621 S.W.2d at 198. In reaching this conclusion, the court stated, "In this case we
deal with an internally generated complaint. Even though the initial information received by the
police department was external, coming from the Dallas County Sheriff's Office, the entire
investigation began within the police department." Id. (emphasis added). The court went on to state
that the supervisor's signed letter of complaint "was in compliance with [the predecessor to
Subchapter B]." Id. The implication of Fudge is that Subchapter B applies to both externally
generated and internally generated complaints, so that any complaint against a law enforcement
officer, including complaints originating from within the police department, "must be reduced to
writing and signed by the person making it." Id. We see no reason why this proposition is not
equally applicable in cases involving complaints originating from within an officer's chain
of command. 

 Texas Attorney General Opinion GA-0251 also contemplates the applicability of
Subchapter B to internal complaints. Tex. Att'y Gen. No. GA-0251. (2) The question at issue was
whether certain provisions of the education code conflict with Subchapter B by allowing a school
superintendent to terminate a school-district peace officer without a written, signed complaint. Id. 
After determining that both Subchapter B and the relevant education code provisions could be
applied to school-district peace officers without conflict, the opinion addresses concerns that students
or parents may be disinclined to provide a written complaint by stating, "As circumstances warrant,
a superintendent of the school district or others may initiate disciplinary action by filing a signed
complaint, or complaints may prompt an internal investigation and report by the police department
sufficient to satisfy the requirements of [Subchapter B]." Id. (citing Fudge, 621 S.W.2d at 198). By
citing Fudge in this context, and pointing out that an internal department report may satisfy
Subchapter B, the opinion assumes the applicability of Subchapter B to internal complaints and
suggests that an internal investigation must result in a written, signed complaint in order to comply
with Subchapter B. (3) 

 We hold that the allegations of misconduct giving rise to Treadway's termination
constitute a "complaint" for purposes of Subchapter B. Accordingly, we reverse the trial court's
order granting summary judgment in favor of the County and remand for further proceedings. (4)


The County's Cross-Appeal

 In a sole issue on cross-appeal, the County argues that the trial court erred in denying
its request for attorneys' fees. Because we hold that the County's motion for summary judgment was
granted in error, we affirm the order denying the County's request for attorneys' fees.

 

CONCLUSION

 We reverse the trial court's order granting summary judgment in favor of the County 
and remand for further proceedings consistent with this opinion. The trial court's order denying the
County's request for attorneys' fees is affirmed.



 __________________________________________

 Diane M. Henson, Justice 

Before Justices Patterson, Waldrop and Henson;

 Dissenting Opinion by Justice Waldrop

Affirmed in part; Reversed and Remanded in part 

Filed: April 16, 2010 
1. Section 143.123 defines "complainant" as "a person claiming to be the victim of
misconduct by a fire fighter or police officer." Tex. Loc. Gov't Code Ann. § 143.123(a)(1)
(West 2008). It was this definition that led the Guthery court to conclude that an internal report
based on an external citizen complaint could not satisfy the requirements of Subchapter B, as the
victim of the misconduct under those circumstances would be the citizen, rather than the police
department itself. Guthery, 112 S.W.3d at 723. There is no citizen complainant in this case. The
only victim of Treadway's alleged misconduct would be the sheriff's office itself.
2. "Opinions of the attorney general, while not binding on the judiciary, are persuasive and
are entitled to consideration." In re Texas Dep't of State Health Servs., 278 S.W.3d 1, 4-5 (Tex.
App.--Austin 2008, no pet.).
3. We note that to the extent the opinion suggests that an internal department report based on
an external citizen complaint may comply with Subchapter B in the absence of a written complaint
from the citizen, that notion conflicts with the holding of Guthery v. Taylor, 112 S.W.3d 715, 723
(Tex. App.--Houston [14th Dist.] 2003, no pet.). In Guthery, the court held that a written complaint
under Subchapter B must be signed by the complaining victim, so that an internal report based on
a citizen's complaint would be insufficient to satisfy Subchapter B. Id. In the present case, the
allegations of misconduct arose internally, so there was no external complaint or citizen victim.
4. While Treadway urges us to render judgment in her favor, we find remand to be the more
appropriate remedy. The County's motion for summary judgment was limited to whether Subchapter
B applied to the facts of this case. On appeal, the County contends that a disputed fact issue remains
as to whether Treadway received a signed complaint that would have complied with Subchapter B. 
Furthermore, other than attorneys' fees, the record contains no evidence of Treadway's damages.