**Opinion issued April 27, 2017**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00769-CV

———————————

**COSMOPOLITAN CONDOMINIUM OWNERS ASSOCIATION, Appellant**

**V.**

**CLASS A INVESTORS POST OAK, LP, Appellee**

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-18261**

## MEMORANDUM OPINION

Class A Investors Post Oak, LP ("the Developer") sued the Cosmopolitan Condominium Owners Association ("the Association") seeking a declaratory judgment after the Association opposed the Developer's plans to build a high-rise on land adjacent to the Cosmopolitan Condominium. The Developer asserted that

the Association was reneging on its agreement to cooperate in the construction of the Developer's planned neighboring high-rise and sought a declaratory judgment declaring its rights under the agreement. The Association moved to dismiss under the Texas Citizens Participation Act (TCPA), claiming that the Developer's suit was based upon the Association's exercise of the rights of free speech, to petition, and of association. The trial court denied the motion.

We affirm.

## Background[1]

In 2006, the owners of two adjacent pieces of property, Cosmopolitan VP, L.P. and AmREIT, were each planning to build high-rise towers on their respective lots. They executed a Temporary Use and Aerial Encroachment Agreement ("the Agreement") to facilitate the planned development. In it, each acknowledged that Cosmopolitan was "developing a high rise condominium tower" on its lot, and that AmREIT "anticipate[d] that it or its successors will redevelop the AmREIT Property in the future with a mixed use high rise tower." Both agreed that they "desired[] to facilitate the development" of both projects, and each agreed that the other would require the use of a portion of the surface and air rights of the other's property to do

---

[1] This information is drawn from the pleadings and evidence before the trial court when it heard the Association's motion to dismiss. We review the pleadings and evidence in a light favorable to the nonmovant. *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80–81 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

so. The agreement, which is recorded in the Harris County real property records, set forth the terms of the aerial and construction easements and states that it is binding on all successors and assigns.

The Cosmopolitan high-rise was completed first. When the Association, the entity that handles the collective affairs of the owners of the condominium units in the Cosmopolitan, learned that AmREIT was moving forward with its plans to build its mixed-use high-rise tower ("the Post Oak project"), the Association's lawyer wrote AmREIT to complain. The April 2014 letter asserted that AmREIT's proposed tower would "be vastly oversized for its proposed location; situated perilously close to the Association's building; create extraordinary traffic hazards; impede fire protection and other emergency vehicles in the area, and substantially interfere with the use and enjoyment of the Association's property." The letter demanded that AmREIT "immediately initiate a litigation hold" related to the project.

AmREIT responded by letter, noting that the Association was bound by the Agreement in which each party had agreed to cooperate in the development of the other's project. The Association wrote back, asserting that the Agreement was "notably vague[,] indefinite and unenforceable," and that "[c]learly, a justiciable controversy exists as to the rights and status of our respective clients under the 2006 Agreement."

The following year, the Developer acquired AmREIT's rights to the Post Oak property. In an affidavit attached to the Developer's response to the Association's motion to dismiss, Brian Dinerstein, a representative of the Developer, averred that the Developer reviewed AmREIT's business records and discovered the correspondence from the Association demanding a litigation hold and questioning the enforceability of the Agreement. The Developer communicated with and met with the Association in an attempt to "move forward cooperatively as the Agreement had outlined." Dinerstein averred that the Developer shared traffic studies, building plans and designs, and construction plans, attended Association Board meetings, and interacted with Dr. Karen Brown, the president of the Association Board. At one point, Brown emailed Dinerstein:

> I asked for your traffic study and haven't gotten it yet. I requested that we both bring our traffic/urban professionals and I haven't heard back from you. I need to let our person know and I need materials to prepare for our meeting. I hope the purpose of the meeting is not to threaten us with a more disruptive building design once again. That would be really unfortunate for all of us and certainly put us in the courthouse.

The Association also requested all documents the Developer had submitted to the City of Houston.

Dinerstein averred that the Developer proposed numerous concessions related to the development of the Post Oak property, but the Association remained opposed, threatened litigation, and "refused to acknowledge or agree to the existence, enforceability, or effect of the Agreement." A group of the Cosmopolitan's unit

4

owners also retained a separate attorney, who wrote the Developer to request design, engineering, and construction documents related to the Post Oak project. The letter stated that "it is not our intent to initiate litigation," but rather, to "avoid it through an exchange of information and further informed discussion."

Shortly thereafter, the Developer sued the Association for a declaratory judgment. The Developer sought declarations that the Association was bound by the Agreement, had agreed to facilitate the development of a high-rise tower on the Post Oak property, had agreed to aerial and construction easements, and was precluded from claiming that a high-rise consistent with the Agreement was a nuisance:

> (1) Cosmopolitan Association is bound by the Temporary Use and Aerial Encroachment Agreement, File No. 20060071900, which runs with both the Post Oak Property and the Cosmopolitan Property;
>
> (2) As a result of the Temporary Use and Aerial Encroachment Agreement, File No. 20060071900, Cosmopolitan Association has knowledge that the Post Oak Property may be developed with a high rise tower, has agreed that the Post Oak Property may be developed with a high rise tower, and has agreed to facilitate the development of a high rise tower on the Post Oak Property;
>
> (3) Pursuant to the Temporary Use and Aerial Encroachment Agreement, File No. 20060071900, the owner of the Post Oak Property has a right to all rights granted under Article II of . . . the Temporary Use and Aerial Encroachment Agreement, File No. 20060071900, including, but not limited to, an easement to operate a construction crane performing construction activities on the Post Oak Property to swing over the Cosmopolitan Property; and
>
> (4) Cosmopolitan Association is prohibited from asserting a claim that either construction of a high rise tower on the Post Oak Property or the

5

use of the Post Oak Property for a high rise tower consistent with the Temporary Use and Aerial Encroachment Agreement, File No. 20060071900, constitutes a nuisance.

The Developer also sought a declaration that the Association could not circumvent its obligations under the Agreement by attempting to privately enforce city ordinances:

> Cosmopolitan Association lacks standing to privately enforce City of Houston ordinances, or challenge the City of Houston's findings regarding compliance with City of Houston ordinances, such as the Houston Construction Code, the Buildings and Neighborhood Protection ordinances, and Noise and Sound Level Regulation Ordinances.

The Association answered and filed a plea to the jurisdiction, arguing that the Developer's claims were not ripe. The Association also moved to dismiss under the TCPA, arguing that the suit was based on the Association's exercise of the rights of free speech, petition, and of association in opposing the Post Oak project. The Developer responded, arguing that the TCPA did not apply because it was not suing the Association for exercising First Amendment rights but, instead, so that the trial court could construe the Agreement and resolve the parties' conflict about its enforceability and scope. The Developer also adduced evidence to support the elements of its declaratory judgment claim. The trial court denied the plea to the jurisdiction and the TCPA motion to dismiss. The Association appealed.[2]

---

[2] The Association's three appellate issues pertain to the denial of its TCPA motion to dismiss, but in the body of its appellate brief, it also seeks reversal of the trial court's denial of its plea to the jurisdiction. We do not have jurisdiction to consider the

6

**Discussion**

In its first and second issues, the Association contends that the trial court erred in denying its motion to dismiss because it showed that the TCPA applied and the Developer failed to establish by clear and specific evidence a prima facie case for each essential element of its declaratory judgment claim.

**A.     Standard of Review and Applicable Law**

To obtain dismissal under the TCPA, a defendant must show "by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of the right of free speech; the right to petition; or the right of association." *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b). In deciding whether to grant a motion under the TCPA, the statute instructs a trial court to "consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a).

If the movant meets its burden to show that a claim is covered by the TCPA, to avoid dismissal of that claim, a plaintiff must establish "by clear and specific

---

merits of the Association's attempted interlocutory appeal from the denial of a plea to the jurisdiction because the Association is a non-governmental entity. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(8) (authorizing interlocutory appeal from grant or denial of plea to jurisdiction by governmental entity only); *Massey v. Barnett*, No. 14-01-0315-CV, 2001 WL 1429389, at *1 (Tex. App.—Houston [14th Dist.] Nov. 15, 2001, no pet.) (not designated for publication) (dismissing for lack of jurisdiction interlocutory appeal of denial of plea to jurisdiction by non-governmental entity). Therefore, we do not address any of the Association's arguments pertaining to the merits of the ruling on its plea to the jurisdiction. *See Massey*, 2001 WL 1429389, at *1.

evidence a prima facie case for each essential element of the claim in question." *See id.* § 27.005(c). In *In re Lipsky*, 460 S.W.3d 579 (Tex. 2015), the Texas Supreme Court clarified how this evidentiary standard should be applied. It wrote: "[M]ere notice pleading—that is, general allegations that merely recite the elements of a cause of action—will not suffice." *Id.* at 590–91. "Instead, a plaintiff must provide enough detail to show the factual basis for its claim." *Id.* at 591. The Supreme Court noted that "[i]n contrast to 'clear and specific evidence,' a 'prima facie case' has a traditional legal meaning." *Id.* at 590. "It refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* (citing *Simonds v. Stanolind Oil & Gas Co.*, 136 S.W.2d 207, 209 (Tex. 1940)). "It is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (per curiam)); *see Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (term "prima facie case" in the TCPA "implies a minimal factual burden," the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true"). Thus, for example, "[i]n a defamation case that implicates the TCPA, pleadings and evidence that establish[ ] the facts of when, where, and what was said, the defamatory nature of the statements, and how

8

they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss." *Lipsky*, 460 S.W.3d at 591.

If the nonmovant establishes a prima facie case, the burden shifts back to the movant. In order to obtain dismissal, the movant must establish by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(d).

We review de novo a trial court's ruling on a motion to dismiss under the TCPA. *See Better Bus. Bur. of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). In conducting this review, we review the pleadings and evidence in a light favorable to the nonmovant. *Crazy Hotel*, 416 S.W.3d at 80–81.

## B. Did the Developer establish a prima facie case?

In its first and second issues, the Association argues that the trial court erred in denying its motion to dismiss because the TCPA applies to the Developer's suit and the Developer failed to adduce clear and specific evidence to support each element of its declaratory judgment claim. The Developer argues that the Association did not show that the TCPA applies to its suit, and, even if it did, the Developer satisfied its evidentiary burden to establish a prima facie case. For purposes of this interlocutory appeal, we will assume without deciding that the suit relates to the Association's exercise of its First Amendment rights, because we agree

9

with the Developer that it established a prima face case of its declaratory judgment claim.

### 1. Applicable Law

Under the Uniform Declaratory Judgments Act ("UDJA"), a person whose rights, status, or other legal relations are affected by a contract may have a court determine any question of construction or validity arising under the contract and may obtain a declaration of his rights under that instrument. TEX. CIV. PRAC. & REM. CODE § 37.004(a); *Guthery v. Taylor*, 112 S.W.3d 715, 720 (Tex. App.—Houston [14th Dist.] 2003, no pet.), *abrogated on other grounds by Colorado Cty. v. Staff*, 510 S.W.3d 435 (Tex. 2017). The purpose of a declaratory judgment claim is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations . . . ." TEX. CIV. PRAC. & REM. CODE § 37.002(b); *Anderton v. City of Cedar Hill*, 447 S.W.3d 84, 94 (Tex. App.—Dallas 2014, pet. denied).

The requirement that a claim be justiciable or ripe applies to declaratory judgment actions. *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex. 2004). A declaratory judgment is appropriate if (1) a justiciable controversy exists as to the rights and status of the parties and (2) the controversy will be resolved by the declaration sought. *See id.*; *Tex. Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153 (Tex. App.—Austin 1998, no pet.) (citing *Bonham State Bank v. Beadle*, 907

10

S.W.2d 465, 467 (Tex. 1995)). A justiciable controversy is one in which a real and substantial controversy exists involving a genuine conflict of tangible interest and not merely a theoretical dispute. *Moore*, 985 S.W.2d at 153. However, "[i]t is not necessary that a person who seeks a declaration of rights under [the UDJA] shall have incurred or caused damage or injury in a dispute over rights and liabilities, but it has frequently been held that an action for declaratory judgment would lie when the fact situation manifests the presence of 'ripening seeds of a controversy.'" *Id.* at 153–54 (quoting *Ainsworth v. Oil City Brass Works*, 271 S.W.2d 754, 760–61 (Tex. Civ. App.—Beaumont 1954, no writ)). Accordingly, we evaluate the pleadings and evidence adduced in connection with the motion to dismiss to determine whether the Developer established a prima facie case by clear and specific evidence that (1) a justiciable controversy exists as to the rights and status of the parties and (2) the controversy will be resolved by the declaration sought. *See Brooks*, 141 S.W.3d at 163–64.

### 2. Do the pleadings and evidence demonstrate a justiciable controversy?

The Association argues that the Developer failed to adduce clear and specific evidence that a justiciable controversy exists. The Developer responds that it demonstrated that there is a justiciable controversy because the Association denied that it was bound by the Agreement, questioned its terms, and requested information

11

from the Developer in a manner suggesting that it intends to attempt to privately enforce city ordinances in order to circumvent the Agreement.

We conclude that the Developer adduced clear and specific evidence establishing a prima facie case of the first element of its declaratory judgment claim: a justiciable controversy exists as to the rights and status of the parties with respect to the Agreement and whether the Association may privately enforce city ordinances. The Developer submitted in its response to the Association's motion a letter written on behalf of the Association in which the Association denied that the Agreement is enforceable, calling it "notably vague[,] indefinite and unenforceable," and stating that "[c]learly, a justiciable controversy exists as to the rights and status of" the parties under the Agreement. The Developer also adduced evidence that Brown, the Association's president, told the Developer that if it did not propose a different design for its high-rise, it "would be really unfortunate for all of us and certainly put us in the courthouse." The Association contends that Brown sent this in her personal, and not representative capacity, but we are required to view the evidence in the light most favorable to the Developer. The Developer thus adduced evidence of a real and substantial controversy involving a genuine conflict of tangible interests. And its petition makes clear that the declarations it seeks are aimed at obtaining relief from uncertainty with respect to its contractual rights. *See*

TEX. CIV. PRAC. & REM. CODE § 37.004(a); *Guthery*, 112 S.W.3d at 720; *see also* TEX. CIV. PRAC. & REM. CODE § 37.002(b).

The Association argues that there is contrary evidence in the record showing that no justiciable controversy exists. With respect to the Agreement, the Association contends that it adduced evidence that it recently refused to take any position with respect to the Agreement's enforceability, in contrast to its earlier explicit disavowal, and therefore the Developer cannot establish a prima facie case that a justiciable controversy exists. At best, however, this evidence shows that the Association refuses to acknowledge that it is bound by the Agreement—supporting the Developer's claim that there is a justiciable controversy about its enforceability. The Association also points to evidence that its Board recently voted not to pursue litigation against the Developer. The Developer adduced evidence, however, that the Vice President of the Association later testified that "the Association has not yet decided whether it will challenge the construction of a residential high rise" by the Developer.

The Association also argues that, because it has not attempted to assert a private right of action based upon city ordinances against the Developer, no justiciable controversy exists. However, "[i]t is not necessary that a person who seeks a declaration of rights under [the UDJA] shall have incurred or caused damage or injury in a dispute over rights and liabilities, but it has frequently been held that

13

an action for declaratory judgment would lie when the fact situation manifests the presence of 'ripening seeds of a controversy.'" *Moore*, 958 S.W.2d at 153–54 (quoting *Ainsworth*, 271 S.W.2d at 760–61). The Developer adduced evidence that the Association has requested information that would support such an attempt, as well as evidence that the Association opposes the project and "ha[s] not yet decided" whether it will challenge the development of the Post Oak project in court.

When we consider the evidence in a light favorable to the nonmovant, as we are required to do, the evidence is sufficient to support a rational inference that a justiciable controversy about the enforceability and scope of the Agreement exists. *See Lipsky*, 460 S.W.3d at 590 (TCPA nonmovant only required to adduce evidence to support rational inference that allegation of fact is true); *Crazy Hotel*, 416 S.W.3d at 80 (prima facie case requires only minimum quantum of evidence necessary to support rational inference that allegation of fact is true). We therefore hold that the Developer met its burden to adduce clear and specific evidence that there is a justiciable controversy between the parties. *See Brooks*, 141 S.W.3d at 163–64; *Moore*, 985 S.W.2d at 153.

### 3. Will the requested declaration resolve the controversy?

The Developer also adduced clear and specific evidence establishing a prima face case of the second element of its declaratory judgment claim: that the controversy will be resolved by the declarations sought. The justiciable controversy

14

between the parties relates to the enforceability and scope of the Agreement. The declarations sought by the Developer are directed at these issues. While the Association denies that a justiciable controversy exists, it does not contend that, if such a controversy exists, the requested declaratory judgment will not resolve it. While it is left to the trial court to decide whether to grant the declaratory relief sought, we hold that the Developer met its burden to adduce clear and specific evidence that the controversy would be resolved by the declarations sought. *See Brooks*, 141 S.W.3d at 163–64; *Moore*, 985 S.W.2d at 153.

We overrule the Association's first and second issues.

## C. Did the Association establish a valid defense?

In its third issue, the Association contends that even if the Developer met its burden to prove a prima facie case, the trial court erred by failing to grant its motion to dismiss because it established by a preponderance of the evidence a valid defense to the Developer's claim: that it was not a proper party to the lawsuit. However, the Association did not raise this argument in its motion to dismiss. Accordingly, it has waived this issue. *See* TEX. R. APP. P. 33.1.

We overrule the Association's third issue.

## Conclusion

Because the Developer established a prima face case of its declaratory judgment claim and the Association did not establish by a preponderance of the

15

evidence each essential element of a valid defense, we hold that the trial court properly denied the Association's TCPA motion to dismiss. We affirm the trial court's order.


Rebeca Huddle
Justice

Panel consists of Justices Keyes, Bland, and Huddle.