# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00086-CV

**Appellant, Cristina L. Treadway// Cross-Appellants, Sheriff James R. Holder
and Comal County, Texas**

**v.**

**Appellees, Sheriff James R. Holder and Comal County, Texas// Cross-Appellee,
Cristina L. Treadway**

---

### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. C2006-0918A, HONORABLE RONALD G. CARR, JUDGE PRESIDING

---

## O P I N I O N

Appellant Cristina Treadway appeals from the trial court's order granting summary judgment in favor of appellees Sheriff James Holder and Comal County (collectively, "the County") in her suit for declaratory and mandamus relief. The County cross-appeals, arguing that the trial court erred in denying its request for attorney's fees. We reverse the trial court's order granting summary judgment and remand for further proceedings. We affirm the trial court's denial of the County's request for attorney's fees.

## DISCUSSION

Treadway began employment with the Comal County Sheriff's Office in February 1994, serving as a corrections officer at the county jail. She was promoted to the rank of

corporal, and again to the rank of sergeant, before moving into the position of administrative sergeant in October 2001.

In late December 2005, Jeff Paullus, the lieutenant in the jail division of the sheriff's office and Treadway's supervisor, received a complaint from a shift sergeant that Treadway had met with a trainee, Jason Cline, only twice that month despite a requirement that she meet with him weekly. In response to this allegation, Treadway claimed that she had met with Cline four times that month, providing copies of weekly observation reports to confirm her statement. Paullus then reviewed the applicable employee time sheets and jail camera footage, and ultimately concluded that Treadway had not met with the trainee each week as required, and that she had fabricated the observation reports. On February 13, 2006, Sheriff Holder ordered Treadway's termination. The County maintains that Treadway was not terminated for failing to meet with a trainee on a weekly basis, but for falsifying government documents and lying in the course of an investigation. According to Treadway, she learned about the allegations of her untruthfulness or falsification of government records for the first time from the County's legal counsel after her discharge, and she never received a signed, written complaint regarding these allegations.

Treadway filed suit against the County, seeking a declaration that the County violated chapter 614, subchapter B of the government code (hereinafter, "Subchapter B") in terminating her. *See* Tex. Gov't Code Ann. §§ 614.021-.023 (West Supp. 2009). Subchapter B pertains to complaints against peace officers and describes procedures that must be followed before disciplinary action may be taken. *See id.* The parties filed cross motions for summary judgment, and on October 19, 2007, the trial court granted the County's motion and denied Treadway's motion. On February 7, 2008,

2

the trial court entered a take-nothing judgment in favor of the County, but denied the County's request for attorneys' fees. This appeal and cross-appeal followed.

## STANDARD OF REVIEW

Summary judgments are reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The issues raised in this appeal involve statutory construction, which is also subject to de novo review. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). In determining the legislature's intent in enacting a statute, courts should look to the plain meaning of the words used in the statute. *See Fireman's Fund County Mut. Ins. Co. v. Hidi*, 13 S.W.3d 767, 768-69 (Tex. 2000). We presume that every word was deliberately chosen and that excluded words were intentionally excluded. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981).

## DISCUSSION

In a single issue on appeal, Treadway argues that the trial court erred in granting the County's motion for summary judgment on the ground that the requirements of Subchapter B do not apply to her termination because it was not based on a "complaint" as contemplated by the statute.

The County concedes that Treadway is a law enforcement officer subject to Subchapter B. *See* Tex. Gov't Code Ann. § 614.021. Subchapter B provides as follows:

SUBCHAPTER B. COMPLAINT AGAINST LAW ENFORCEMENT OFFICER
OR FIRE FIGHTER

§ 614.021. Applicability of Subchapter

. . . .

3

§ 614.022.  Complaint to be in Writing and Signed by Complainant

To be considered by the head of a state agency or by the head of a fire department or local law enforcement agency, the complaint must be:

    (1)  in writing; and

    (2)  signed by the person making the complaint.

§ 614.023.  Copy of Complaint to be Given to Officer or Employee

a)  A copy of a signed complaint against a law enforcement officer of this state or a fire fighter, detention officer, county jailer, or peace officer appointed or employed by a political subdivision of this state shall be given to the officer or employee within a reasonable time after the complaint is filed.

(b)  Disciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the officer or employee.

(c)  In addition to the requirement of Subsection (b), the officer or employee may not be indefinitely suspended or terminated from employment based on the subject matter of the complaint unless:

    (1)  the complaint is investigated; and

    (2)  there is evidence to prove the allegation of misconduct.

*Id.* §§ 614.021-.023.

Treadway contends that the County violated Subchapter B in terminating her because she did not receive a copy of a signed complaint regarding her alleged dishonesty and falsifying of government documents prior to her termination.  In response, the County argues that Subchapter B does not apply to Treadway's termination because she was not terminated on the basis of a "complaint."  Accordingly, this appeal turns on the question of whether the internal allegations leading to Treadway's termination constitute a "complaint" under Subchapter B.

4

The County argues that Subchapter B cannot be construed to apply to allegations made against an officer by his or her supervisors because to do so would alter the employment at-will status of peace officers in Texas. The long-standing rule in Texas is that absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will "for good cause, bad cause, or no cause at all." *See Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). At-will employment may be modified by contract or by express rules or policies. *See County of Dallas v. Wiland*, 216 S.W.3d 344, 348 (Tex. 2007); *see also Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir. 2003) (stating that at-will status may be abrogated by "statute, rule, handbook, or policy which limits the condition under which the employment may be terminated"). While the County emphasizes the at-will status of peace officers in Texas, we need not address any effect Subchapter B might have on at-will employment because it is undisputed that Treadway was terminated for cause. The issue, then, is not whether she could have been terminated without cause, but whether the cause for which she *was* terminated—lying to a supervisor and falsifying training documents—resulted from a "complaint" that triggers the requirements of Subchapter B.

Subchapter B, while requiring complaints to be in writing and signed by the complainant, does not define "complaint." *See* Tex. Gov't Code Ann. §§ 614.021-.023. Given the lack of definitions in Subchapter B itself, at least one court of appeals has found guidance in interpreting Subchapter B by looking to the Fire Fighter and Police Officer Civil Service Act (the "Civil Service Act"), Tex. Loc. Gov't Code Ann. §§ 143.001-.363 (West 2008 & Supp. 2009). *See Guthery v. Taylor*, 112 S.W.3d 715, 723 (Tex. App.—Houston [14th Dist.] 2003, no pet.). The Civil Service Act, which applies to certain municipal fire fighters and police officers, was enacted in order

5

to "secure efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public servants." *Id.* § 143.001. Section 143.123 of the Civil Service Act governs the interrogation of a fire fighter or police officer in the course of an investigation that might result in punitive action against that person. *See id.* § 143.123. After observing the "similar nature" of section 143.123 and Subchapter B in both purpose and legislative history, the court in *Guthery* held that the definition of "complainant" found in section 143.123 was equally applicable to Subchapter B. 112 S.W.3d at 723.[1]

Like the court in *Guthery*, we look to section 143.123 of the Civil Service Act for guidance in interpreting Subsection B. An investigation under section 143.123 is triggered by a complaint. *See* Tex. Loc. Gov't Code Ann. § 143.123(f). While "complaint" is not defined, the statute specifically provides that an interrogation may not be conducted "based on a complaint by a complainant who is not a peace officer" unless the complaint is verified. *Id.* This specific provision applying only to complaints by non-peace-officers suggests that in the absence of such qualifying language, the term "complaint" includes internal complaints by other officers. The requirement of a verified written complaint in this context is the only aspect of section 143.123 that differentiates complaints by citizens from internally generated complaints. The statute also provides that a complainant may not also be assigned to conduct an investigation into the complaint, further

---

[1] Section 143.123 defines "complainant" as "a person claiming to be the victim of misconduct by a fire fighter or police officer." Tex. Loc. Gov't Code Ann. § 143.123(a)(1) (West 2008). It was this definition that led the *Guthery* court to conclude that an internal report based on an external citizen complaint could not satisfy the requirements of Subchapter B, as the victim of the misconduct under those circumstances would be the citizen, rather than the police department itself. *Guthery*, 112 S.W.3d at 723. There is no citizen complainant in this case. The only victim of Treadway's alleged misconduct would be the sheriff's office itself.

6

supporting the notion that the legislature did not intend the term "complaint" to be limited to external citizen complaints. *See id.* § 143.123(e).

Furthermore, section 143.123 defines "investigation" as "an administrative investigation, conducted by the municipality, of alleged misconduct by a fire fighter or police officer that could result in punitive action against that person." This definition of "investigation" could be equally applied to an investigation of allegations of misconduct by a citizen, or to an investigation of internal allegations by an officer's supervisor. There is no indication that the legislature intended to create a distinction.

Similarly, the language of Subchapter B states that an officer may not be suspended or terminated as the result of a complaint unless "the complaint is investigated" and "there is evidence to prove the allegation of misconduct." Tex. Gov't Code Ann. § 614.023(c). Consequently, it appears that under both the Civil Service Act and Subchapter B, a "complaint" triggers an investigation into allegations of misconduct. *Compare* Tex. Loc. Gov't Code Ann. § 143.123(a)(2) *with* Tex. Gov't Code Ann. § 614.023(c). Neither statute makes any distinction based on the source of the allegations. Therefore, it necessarily follows that a "complaint" for purposes of Subchapter B is any allegation of misconduct that could result in disciplinary action.

Under this definition, the allegations against Treadway—dishonesty and falsifying training records—qualify as a complaint. The fact that these allegations were made by Treadway's supervisors is immaterial. Rather, the relevant facts are that there were allegations of misconduct, and that these allegations led to Treadway's termination. In requiring that there be an investigation and evidence to prove allegations of misconduct before an officer can be terminated, Subchapter B

7

makes no exception for allegations by an officer's supervisors. *See* Tex. Gov't Code Ann. § 614.023(c). Because every word excluded from a statute is presumed to have been excluded for a purpose, we cannot read additional language into the statute to create such an exception. *See Cameron*, 618 S.W.2d at 540. Under the plain language of section 614.023, any "allegation of misconduct" for which disciplinary action may be imposed represents a complaint, regardless of the source. *See* Tex. Gov't Code Ann. § 614.023.

Our conclusion that a "complaint" for purposes of Subchapter B includes any allegation of misconduct that could give rise to disciplinary action is consistent with the purpose of the statute as described in *Turner v. Perry*, 278 S.W.3d 806, 823 (Tex. App.—Houston [14th Dist.] 2009, pet. filed). The court in *Turner* stated:

> By enacting [Subchapter B], the State provided covered employees with procedural safeguards to reduce the risk that adverse employment actions would be based on unsubstantiated complaints. Moreover, the State determined that the value of these protections outweighs the fiscal and administrative burdens incurred by complying with statutory requirements.

*Id.*

The court went on to hold that by failing to provide proper documentation of the complaints against an officer before terminating him, the officer's employer "impaired [his] ability to investigate or defend against the complaints made against him." *Id.*

Here too, Treadway's "ability to investigate or defend against the complaints made against h[er]" was impaired by the County's failure to provide her with a written, signed complaint prior to her termination. *Id.* The legislature enacted Subchapter B to protect peace officers from disciplinary action based on unsubstantiated allegations of misconduct. *See id.* Because we must

8

construe the statute as written, we decline to judicially create an exception for allegations coming from an officer's supervisors.

Furthermore, the definition of "complaint" under Subchapter B has previously been applied to internal complaints. *See Fudge v. Haggar*, 621 S.W.2d 196, 198 (Tex. App.—Texarkana 1981, writ ref'd n.r.e.); *see also* Op. Tex. Att'y Gen. No. GA-0251 (2004). In *Fudge*, the court held that a police department properly complied with the predecessor statute to Subchapter B by presenting a terminated officer with a letter of complaint, signed by his supervisor, prior to terminating him. 621 S.W.2d at 198. In reaching this conclusion, the court stated, "In this case we deal with *an internally generated complaint*. Even though the initial information received by the police department was external, coming from the Dallas County Sheriff's Office, the entire investigation began within the police department." *Id.* (emphasis added). The court went on to state that the supervisor's signed letter of complaint "was in compliance with [the predecessor to Subchapter B]." *Id.* The implication of *Fudge* is that Subchapter B applies to both externally generated and internally generated complaints, so that any complaint against a law enforcement officer, including complaints originating from within the police department, "must be reduced to writing and signed by the person making it." *Id.* We see no reason why this proposition is not equally applicable in cases involving complaints originating from within an officer's chain of command.

Texas Attorney General Opinion GA-0251 also contemplates the applicability of Subchapter B to internal complaints. Tex. Att'y Gen. No. GA-0251.[2] The question at issue was

---

[2] "Opinions of the attorney general, while not binding on the judiciary, are persuasive and are entitled to consideration." *In re Texas Dep't of State Health Servs.*, 278 S.W.3d 1, 4-5 (Tex. App.—Austin 2008, no pet.).

9

whether certain provisions of the education code conflict with Subchapter B by allowing a school superintendent to terminate a school-district peace officer without a written, signed complaint. *Id.* After determining that both Subchapter B and the relevant education code provisions could be applied to school-district peace officers without conflict, the opinion addresses concerns that students or parents may be disinclined to provide a written complaint by stating, "As circumstances warrant, a superintendent of the school district or others may initiate disciplinary action by filing a signed complaint, or complaints may prompt an internal investigation and report by the police department sufficient to satisfy the requirements of [Subchapter B]." *Id.* (citing *Fudge*, 621 S.W.2d at 198). By citing *Fudge* in this context, and pointing out that an internal department report may satisfy Subchapter B, the opinion assumes the applicability of Subchapter B to internal complaints and suggests that an internal investigation must result in a written, signed complaint in order to comply with Subchapter B.[3]

We hold that the allegations of misconduct giving rise to Treadway's termination constitute a "complaint" for purposes of Subchapter B. Accordingly, we reverse the trial court's order granting summary judgment in favor of the County and remand for further proceedings.[4]

---

[3] We note that to the extent the opinion suggests that an internal department report based on an external citizen complaint may comply with Subchapter B in the absence of a written complaint from the citizen, that notion conflicts with the holding of *Guthery v. Taylor*, 112 S.W.3d 715, 723 (Tex. App.—Houston [14th Dist.] 2003, no pet.). In *Guthery*, the court held that a written complaint under Subchapter B must be signed by the complaining victim, so that an internal report based on a citizen's complaint would be insufficient to satisfy Subchapter B. *Id.* In the present case, the allegations of misconduct arose internally, so there was no external complaint or citizen victim.

[4] While Treadway urges us to render judgment in her favor, we find remand to be the more appropriate remedy. The County's motion for summary judgment was limited to whether Subchapter B applied to the facts of this case. On appeal, the County contends that a disputed fact issue remains as to whether Treadway received a signed complaint that would have complied with Subchapter B. Furthermore, other than attorneys' fees, the record contains no evidence of Treadway's damages.

*The County's Cross-Appeal*

In a sole issue on cross-appeal, the County argues that the trial court erred in denying its request for attorneys' fees. Because we hold that the County's motion for summary judgment was granted in error, we affirm the order denying the County's request for attorneys' fees.

**CONCLUSION**

We reverse the trial court's order granting summary judgment in favor of the County and remand for further proceedings consistent with this opinion. The trial court's order denying the County's request for attorneys' fees is affirmed.

_____

Diane M. Henson, Justice

Before Justices Patterson, Waldrop and Henson;
 Dissenting Opinion by Justice Waldrop

Affirmed in part; Reversed and Remanded in part

Filed:   April 16, 2010