**Reversed and Remanded and Opinion filed February 13, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00474-CV

---

## HARRIS COUNTY SHERIFF'S CIVIL SERVICE COMMISSION, Appellant

### V.

### LOUIS GUTHRIE, Appellee

---

**On Appeal from the 295th District Court
Harris County, Texas
Trial Court Cause No. 2010-35811**

---

## O P I N I O N

The Harris County Sheriff's Office (HCSO) terminated former Lieutenant Louis Guthrie's employment for alleged misconduct principally stemming from an incident in which Guthrie conducted a theft investigation at a car wash after his wife reported $17 had been stolen from her vehicle. Guthrie appealed his termination to the Sheriff's Civil Service Commission, which upheld the

termination. Guthrie then appealed to a Harris County district court, contending, among other things, that he had not received a signed copy of the written complaint resulting in his termination as required by section 614.023 of the Texas Government Code. After a trial to the bench in which the record of the Commission proceedings was the only evidence admitted, the district court reversed the Commission's finding and remanded for further proceedings.

The Commission[1] now appeals from the district court's ruling, asserting in three issues that the court erred because (1) Guthrie did not preserve the issue concerning receipt of a signed complaint by timely raising it before the Commission, (2) the evidence demonstrates Guthrie did receive a signed complaint or is insufficient to demonstrate that he did not, and (3) even if Guthrie did not receive the requisite signed complaint, he failed to demonstrate that his substantial rights were thereby prejudiced. Concluding the evidence demonstrates Guthrie in fact did receive a signed complaint, we reverse the district court's judgment and remand to that court for consideration of Guthrie's other complaints regarding his termination.

## Background

According to the "Personnel Order," or letter of termination, Guthrie received from Major R.D. Silvio on May 5, 2009, Guthrie was terminated because an Internal Affairs Division (IAD) investigation concluded that he "violated [HCSO] policies, rules and regulations, and State law, by engaging in off-duty misconduct and being untruthful." Silvio further explained in the letter that

---

[1] The Commission is represented in this appeal by the Harris County Attorney's Office. According to counsel, Harris County is the "real party in interest" in this case, and the Commission was not required to be named in the lawsuit for Guthrie to file his appeal of the Commission's ruling in the district court, citing *Connor v. Klevenhagen*, 726 S.W.2d 205, 207 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). The Commission does not allege any error or make any request or motion based on its being named as a defendant in the trial court.

2

Guthrie had "interfered with an investigation being conducted by the Humble [PD] . . . within their municipality" when he took over and escalated the investigation of his wife's complaint that $17 had been stolen from her vehicle while it was being serviced at a Mister Car Wash in Humble, Texas.[2]  Based on the IAD investigation, Silvio further stated to Guthrie in the letter:

> You untruthfully stated that you did not know Humble PD was handling the investigation and you did not know Mister Car Wash was under the jurisdiction of the Humble PD . . . .  You were not authorized to investigate the incident, you were off-duty outside of your assigned District when the incident took place, and the incident occurred within the jurisdiction of the Humble PD.  Not only did you act without prior authorization of the Sheriff[']s Office, but you grossly overreacted to a minor incident—a Class C misdemeanor involving the alleged theft of $17.  It appears that you improperly attempted to portray a minor offense as a more significant crime, simply because it involved your wife.  These actions demonstrate an extreme lack of judgment on your part that reflects negatively on the Harris County Sheriff's Office.

Further based on the investigation, Silvio expressed concern that by detaining car wash employees and seizing their identifications, Guthrie

> exhibited behavior that was improper, unprofessional and may be actionable under . . . the Texas Penal Code.  [Y]ou improperly utilized your law enforcement authority and position to improperly interfere with an outside agency[']s investigation and to oppress, coerce and intimidate the employees of the car wash.  You have exhibited a lack of judgment that may be criminal and certainly, you exhibited such poor judgment that it is incompatible with the mission of this organization.  [¶]The afore[ ]described situations did not require the escalation of the investigation or the allocation of personnel that you arranged to have dedicated to it, nor should a $17 matter subject this organization to possible litigation because of your complete lack of judgment, professionalism, perspective and proper allocation of

---

[2] There is some discrepancy in the record regarding whether the alleged theft involved $16 or $17.

3

departmental resources. . . . You have discredited yourself, the Sheriff[']s Office and its employees.

In addition, according to Silvio, the IAD investigation revealed Guthrie's "improper use of a County vehicle for personal use and [his] failure to seek authorization to engage in extra employment[ ]. . . as required by departmental policy."

Several exhibits were attached to the termination letter, including a theft investigation report by the Humble PD, a letter regarding the incident at the car wash signed by HCSO Captain Lanny Hitchcock, Guthrie's own sworn statement, a sworn statement by car wash general manager Manuel Rodriguez, a sworn statement by car wash employee Ertis Alfred, Jr., and documentation purporting to show businesses in Harris County in which Guthrie was involved.[3] The record further demonstrates that Guthrie received the termination letter as a "proposed personnel order" and was given a chance to respond to the allegations before the letter became official.

Guthrie subsequently appealed his termination to the Commission, and a hearing was held before three commissioners on May 12, 2010. During the course of the hearing, Guthrie, Rodriguez, and several officers testified. The commissioners also had before them the termination letter, IAD reports and supporting documents, and the exhibits mentioned above.

According to Rodriguez, on July 2, 2008, Cheryl Guthrie complained to him that $16 had been taken out of the middle console of her vehicle while it was being serviced at the car wash. Rodriguez stated that he apologized to her and went to the vacuum area to investigate. He had his employees empty the contents of their

---

[3] Additional sworn statements concerning the car wash incident appear in the record after the proposed termination letter but are not specifically referenced in the letter. These include statements by a deputy sheriff, an Humble PD officer, and two additional car wash employees.

4

pockets, but none had more than four dollars. He then further questioned the two employees who had been performing vacuuming in the lane where Mrs. Guthrie's vehicle was serviced. When he returned to Mrs. Guthrie, she told him that her husband wanted to speak to him, and she handed Rodriguez her cell phone. According to Rodriguez, Guthrie identified himself as a sheriff's department lieutenant and told Rodriguez, "I'm on my way to close your business down."

Guthrie then contacted HCSO Lieutenant John Morrison and requested that he send a unit to the car wash. A short time later, two Humble PD officers arrived on the scene and began investigating.[4] HCSO Deputy Steven Chapman and Sergeant James Alexander then arrived on the scene independently. Alexander testified that, when he saw that Humble PD officers had already responded, he told Chapman to return to service and then spoke with Mrs. Guthrie. When Guthrie himself arrived on the scene, he spoke briefly to his wife and to Rodriguez; he then instructed Alexander to order "three to four" additional units to the car wash.[5] Alexander then called Chapman back to the car wash.[6]

---

[4] Evidence indicated that the Humble PD was alerted to the alleged theft because one of the sheriff's deputies originally instructed to respond had a son who was an Humble PD officer; the sheriff's deputy suggested his son's unit respond to the theft report as the car wash was located in Humble.

[5] Rodriguez and two other car wash employees, Don Curry and Melissa Greer, stated that Guthrie again told Rodriguez that he was going to "shut your business down," after Guthrie arrived at the car wash. Guthrie maintained in his statement and testimony that Rodriguez had not been sufficiently cooperative in responding to the alleged theft. In fact, Guthrie asserted that Rodriguez cursed at him and claimed that an Humble PD officer had told him Guthrie could not shut down the car wash. Humble PD Detective Domingo Villareal, a frequent customer of the car wash, acknowledged speaking with Rodriguez and telling him that he should cooperate with the Humble PD officers and that the sheriff's office could not shut the business down.

[6] Ultimately, Guthrie caused at least four sheriff's deputies to respond to the scene even though Humble PD officers already were present. The four deputies included lieutenants Guthrie and Morrison, Sergeant Alexander, and Deputy Chapman. At least three Humble PD officers also responded based on requests initiated by Guthrie: the initial two patrolmen (Damien Brown and Tony Taylor) and a sergeant (Melinda Bradshaw) whom Patrolman Brown called allegedly at Guthrie's request.

5

According to several witnesses, including Guthrie himself, Guthrie then directed the "30-40" car wash employees into one area where Guthrie and other officers gathered their identification cards. Chapman then "ran" each of the identifications to determine if any of the employees had warrants out for their arrest or were otherwise "wanted" by any law enforcement agencies. Guthrie further directed Chapman to place crime scene tape around the premises, blocking entry to all of the car wash lanes. Once HCSO personnel arrived on the scene in numbers and taped off the premises, the responding Humble PD officers moved to an adjacent parking lot and merely observed.

According to Lieutenant Morrison, he subsequently received a second telephone call from Guthrie in which Guthrie requested that Morrison "respond to the car wash and take over the scene."[7] When Morrison arrived, he first spoke to Chapman, who had been "running employee[s'] names through the computer." Morrison instructed Chapman "to pull the crime scene tape down and return to service." Morrison then spoke with Guthrie and Alexander, although Morrison could not recall in which order these conversations occurred.[8] Morrison also instructed Alexander to "return to service." While Morrison was speaking to Guthrie, another individual arrived at the car wash, whom Morrison believed to be the Mister Car Wash district manager.[9] According to Morrison, the individual "expressed . . . his displeasure about the business being shut down and losing

---

[7] Guthrie stated that he made this request of Morrison after speaking on the telephone with Mike Hogan, the vice president of Mister Car Wash, who requested Guthrie not be in charge of the scene because he was the husband of the alleged victim.

[8] Both Morrison and Alexander stated that the car wash was clearly in the Humble city limits and neither thought that HCSO needed to conduct an investigation of the theft because it was already being handled by the Humble PD. Both officers also stated that Morrison told Guthrie that "the Sheriff's Office didn't need any[ ]more bad press."

[9] This apparently was Mark Bartlett, the area manager for Mister Car Wash, who arrived on the scene at some point and spoke with officers and employees.

money." Meanwhile, another individual arrived, whom Morrison understood to be a vice president of Mister Car Wash. This individual stated to Morrison that "he wanted to file a complaint on" Guthrie. Morrison then provided the individual with the name, address, and telephone number of Guthrie's immediate supervisor, Major Lanny Hitchcock.[10]

In a signed letter, dated July 7, 2008, to an IAD lieutenant, Hitchcock recounted receiving a telephone call from someone who identified himself as Mike Hogan, vice president of Mister Car Wash. According to Hitchcock, Hogan explained that he had not been present at the car wash when the incident happened, but he relayed what Rodriguez had told him about the incident, including Rodriguez's estimate that Guthrie had closed the business down for 40 to 45 minutes. After his initial conversation with Hogan, Hitchcock looked into the matter, including speaking in detail to Guthrie. Hitchcock then called Hogan back. Regarding that call, Hitchcock stated:

> I asked Mr. Hogan what possible resolution he sought and he only [requested] that we look into it internally and handle it in a manner we saw fit. I advised Mr. Hogan that the matter would be investigated to determine any wrong doing [sic] or over reaction [sic] and that at some point it may require us contacting employees of the car wash. Mr. Hogan advised he would like us to do this with as little interruption to business as possible.[11]

After Morrison took over the scene, Guthrie approached Rodriguez and complained that his wife's vehicle had not been properly cleaned. According to

---

[10] In his own sworn statement and hearing testimony, Guthrie agreed with the basic outline of events presented here, although not necessarily with all of the details. He further acknowledged that the situation at the car wash became "overblown."

[11] It is unclear from the record whether an internal investigation had been or would have been instituted without such complaint. While Hitchcock informed IAD in the letter that he had received a complaint from Hogan over the telephone, Hitchcock also stated in the same letter that he understood the investigation had already been assigned to IAD.

7

car wash employee Ertis Alfred, Jr., Rodriguez directed him to clean the console of Mrs. Guthrie's vehicle. When he exited the vehicle, Guthrie and his wife were standing nearby, and Alfred reported that he heard Guthrie say, "Don't worry about the missing money; we have already cost them more than what was taken."

As mentioned, the Commissioners also had before them the IAD reports, which included written statements from numerous Mister Car Wash employees (not including Hogan), Humble PD officers, and HCSO deputies. The IAD reports also included a lengthy report by Sergeant Chris Sandoval that began "[o]n July 3, 2008, Lt. D. Field assigned this Internal Affairs Investigation to me . . . ."[12]

At the conclusion of the hearing, Guthrie's counsel argued, among other things, that Guthrie could not be disciplined because there was no written report signed by Hogan. The commissioners then voted 2-1 to uphold the termination. The Commission subsequently issued a written ruling, and Guthrie filed an appeal of the decision in the district court. In his Original Petition, Guthrie requested that the Commission's determination be reversed and he be reinstated because (1) he had not received a signed complaint as required by section 614.023 of the Texas Government Code, (2) the termination was not in compliance with Rule 12.03(b) of the Sheriff's Civil Service Regulations, which requires "[t]he cause for disciplinary action shall be in writing and shall particularly state the reason or reasons for which the Sheriff feels that disciplinary action is necessary," (3) the Commission did not permit him to present evidence that the discipline he received was inequitable when compared to discipline imposed on others for more serious conduct, and (4) his due process rights were violated because the IAD investigator

---

[12]During the hearing, Sandoval acknowledged that he had omitted from his report any mention of a videotape made at the car wash at the time of the incident. According to Sandoval, he did not believe that the videotape (in which conversations were apparently not audible) added anything of value to the investigation.

destroyed a material videotape recording of the incident at the car wash.

After a bench trial, the trial court set aside the Commission's decision because "[t]he record indicates that the Commission did not follow the mandatory procedures set forth in [the] Texas Government Code that unambiguously states that '[d]isciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the officer or employee,'" quoting section 614.023(b). The court declined to order Guthrie's reinstatement, however, and instead remanded the case to the Commission for further proceedings. The court did not rule on Guthrie's other grounds for reversing the Commission's decision, which he had pleaded and argued at trial.

## Issues Presented

As set forth above, the Commission raises three issues in this appeal, arguing that the trial court erred because (1) Guthrie did not preserve the issue concerning receipt of a signed complaint by timely raising it before the Commission, (2) the evidence demonstrates Guthrie did receive a complaint or is insufficient to demonstrate that he did not, and (3) even if Guthrie did not receive the requisite complaint, he failed to demonstrate that his substantial rights were thereby prejudiced. We will begin by addressing the second issue, concerning whether there is evidence Guthrie actually received a signed written complaint in compliance with section 614.023.

## Standard of Review

The proper interpretation of statutory language is a matter for de novo review. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008); *Treadway v. Holder*, 309 S.W.3d 780, 782 (Tex. App.—Austin 2010, pet. denied); *see also Guthery v. Taylor*, 112 S.W.3d 715, 720 (Tex. App.—Houston [14th

9

Dist.] 2003, no pet.) (stating the question of whether particular document sufficed as the "signed complaint" required by section 614.023 was one of statutory construction). In determining the legislature's intent in enacting a statute, we look to the plain meaning of the words used in the statute. *See Fireman's Fund Cnty. Mut. Ins. Co. v. Hidi*, 13 S.W.3d 767, 768–69 (Tex. 2000). We presume that every word was deliberately chosen and that excluded words were intentionally excluded. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981).

This appeal from the Commission's decision is further governed by the "substantial evidence rule," under which the court is not allowed to substitute its judgment for that of the Commission on the weight of the evidence or on matters committed to the Commission's discretion. *See* Tex. Loc. Gov't Code §§ 158.0121, 158.037-0371. The Commission's decision may be reversed only if substantial rights of the petitioner have been prejudiced because the Commission's findings, inferences, conclusions, or decisions are: in violation of a constitutional or statutory provision; in excess of the commission's authority; made through unlawful procedure; affected by other error of law; not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or arbitrary or capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion. *Id*. § 158.0121.

## Section 614.023

The parties agree that Guthrie is a law enforcement officer subject to Texas Government Code, Chapter 614, Subchapter B. Tex. Gov't Code §§ 614.021-.023. Section 614.023 of that subchapter reads as follows:

**§ 614.023. Copy of Complaint to Be Given to Officer or Employee**

(a) A copy of a signed complaint against a law enforcement officer of this state or a fire fighter, detention officer, county jailer, or peace

officer appointed or employed by a political subdivision of this state shall be given to the officer or employee within a reasonable time after the complaint is filed.

(b)  Disciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the officer or employee.

(c)  In addition to the requirement of Subsection (b), the officer or employee may not be indefinitely suspended or terminated from employment based on the subject matter of the complaint unless:

(1) the complaint is investigated; and

(2) there is evidence to prove the allegation of misconduct.

Tex. Gov't Code § 614.023.

"By enacting [Subchapter B], the State provided covered employees with procedural safeguards to reduce the risk that adverse employment actions would be based on unsubstantiated complaints." *Turner v. Perry*, 278 S.W.3d 806, 823 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *see also Treadway*, 309 S.W.3d at 784 (quoting *Turner*). In doing so, "the State determined that the value of these protections outweighs the fiscal and administrative burdens incurred by complying with statutory requirements." *Turner*, 278 S.W.3d at 823; *see also Treadway*, 309 S.W.3d at 784-85. When a law enforcement agency governed by the subchapter fails to provide proper documentation of the complaints against an officer, it impairs the officer's ability to investigate or defend against the complaints. *See Treadway*, 309 S.W.3d at 785; *Turner*, 278 S.W.3d at 823.

"Complaint," as used in the section, has been defined as "any allegation of misconduct that could result in disciplinary action." *Bracey v. City of Killeen*, No. 03-12-00199-CV, 2013 WL 5979624, at * 3 (Tex. App.—Austin Nov. 6, 2013, no pet. h.) (quoting *Treadway*, 309 S.W.3d at 784). In *Guthery*, we defined

11

"complainant" for purposes of section 614.023 as "a person claiming to be the victim of misconduct by a fire fighter or police officer."  112 S.W.3d at 721-23 (borrowing definition from Local Government Code section 143.123(a)(1) governing municipal employees, based on similarity of statutes' purpose and language); *see also Turner*, 278 S.W.3d at 822.  Section 614.022 requires that, in order to be considered by [the Sheriff], a complaint must be in writing and signed by the complainant.  *See* Tex. Gov't Code § 614.022.  Therefore, we conclude that a "signed complaint" under 614.023 could only be a complaint written and signed by a person claiming to be the victim of misconduct.

**Analysis**

Guthrie contends, and the trial court held, that the Commission erred in upholding the termination because Guthrie did not receive a "signed complaint" as required by section 614.023.  Guthrie maintains that the complainant in this case was Mister Car Wash's vice president, Mike Hogan, and that there was no evidence Guthrie received a complaint signed by Hogan.  In support of his contention that a signed complaint must have been produced from Hogan—as distinct from any other person—in order for discipline to have been permissible, Guthrie points out that in the termination letter, Major Silvio mentioned that Hogan had "filed a complaint against" Guthrie.  However, the mere fact Silvio mentioned Hogan's telephone call did not foreclose discipline against Guthrie in the absence of a written complaint signed by Hogan.

In his hearing testimony before the Commission, Silvio admitted that he did not know if the Sheriff's Office ever obtained a written, signed complaint from Hogan.  When asked whether Guthrie "was fired because of Mr. Hogan's complaint," Silvio stated "I don't think that's why he was fired" and explained that in the termination letter he merely pointed out that Hogan did in fact call in a

12

complaint. The IAD report listed the complainant as HCSO. Sandoval's report indicated that an internal affairs investigation had been opened four days before Hitchcock sent his letter describing the Hogan call.

Hogan's complaint appears to have been based largely on interruption of Mister Car Wash's business (preventing customers from entering and restricting employees to a central location). The termination letter, however, lists as reasons for the termination several violations of enumerated HCSO Civil Service Regulations, focusing on Guthrie's alleged untruthfulness regarding the car wash incident, gross overreaction to a minor incident, "extreme lack of judgment . . . that reflects negatively on the Harris County Sheriff's Office," "behavior that was improper, unprofessional and may be actionable under . . . the Texas Penal Code," improper utilization of his law enforcement authority to interfere with another agency's investigation, attempt "to oppress, coerce and intimidate the employees of the car wash," "complete lack of judgment, professionalism, perspective and proper allocation of departmental resources," "improper use of a County vehicle for personal use," and "failure to seek authorization to engage in extra employment[ ]. . . as required by departmental policy."

Although the record may not reflect everything Guthrie received regarding the allegations before he was terminated, the record establishes that he received the proposed termination letter and its attachments, which included, at a minimum, the Humble PD theft investigation report, Hitchcock's letter regarding the car wash incident, sworn statements by Guthrie himself, Rodriguez, and Alfred, and documentation purporting to show businesses in Harris County in which Guthrie was involved. Rodriguez's statement is of particular note. Rodriguez was the general manager of the Mister Car Wash location when Guthrie interrupted the normal conduct of the business, his interactions with Guthrie were at the heart of

the allegations which led to Guthrie's termination, he was threatened by Guthrie with closure of the business, his identification was one that was taken and "run" at Guthrie's direction, he was one of the persons restricted to "one spot," and he was Hogan's primary source of information, as Hogan was not on scene during most of the incident. In his signed, written statement, Rodriguez provided considerable detail regarding Guthrie's conduct and its impact on Rodriguez and the car wash. Rodriguez could therefore properly be considered a complainant as we have defined that term for section 614.023 purposes: "a person claiming to be the victim of misconduct by a fire fighter or police officer." *Guthery*, 112 S.W.3d at 722; *see also Turner*, 278 S.W.3d at 822. Likewise, his signed, written statement qualifies as a complaint, *i.e.*, "any allegation of misconduct that could result in disciplinary action." *Bracey*, 2013 WL 5979624, at * 3; *Treadway*, 309 S.W.3d at 784.[13]

Moreover, it is clear that Guthrie's termination was not based on anonymous or unsubstantiated complaints. *See Treadway*, 309 S.W.3d at 784 (discussing purpose of section 614.023 requirements); *Turner*, 278 S.W.3d at 823 (same). The proposed termination letter spelled out the allegations, attached supporting documentation (including Rodriguez's statement), and explained why the alleged conduct necessitated Guthrie's dismissal. It is also worth noting that Guthrie's own sworn statement corroborates many of the allegations identified as the basis for his termination. It therefore cannot be said that Guthrie received insufficient information to allow him to investigate or defend against the complaints. *See Treadway*, 309 S.W.3d at 785; *Turner*, 278 S.W.3d at 823. This is not a case

---

[13] Guthrie points out that Silvio mentioned in the termination letter that Hogan lodged a complaint but did not mention Rodriguez having lodged a complaint. The character of Rodriguez's sworn statement, however, does not turn on whether Silvio described it using the proper "magic word" in the termination letter.

where an officer was terminated based on anonymous allegations or the complete absence of a signed statement by a complainant. *See, e.g., Turner*, 278 S.W.3d at 823-24 (pointing out anonymous complaints against officer that were not written and contained no dates or names did not provide enough information for officer to investigate and were inconsistent with required Subchapter B procedures); *Guthery*, 112 S.W.3d at 723-24 (holding "Notice of Proposed Disciplinary Action" signed by chief of police did "not suffice as the 'complaint'" where alleged conduct was damage to a citizen's door witnessed only by the citizen herself). Because we conclude Guthrie in fact received a signed complaint and other documentation sufficient to meet the requirements of section 614.023(b), we sustain the Commission's second issue.[14] Having sustained its second issue, we need not consider its first and third issues.

We reverse the trial court's judgment and remand for further proceedings in accordance with this opinion.

/s/    Martha Hill Jamison
       Justice

Panel consists of Justices Boyce, Jamison, and Busby.

---

[14] In his briefing to this court, Guthrie suggests that even if he received a proper signed complaint, he did not receive it "within a reasonable time after the complaint [was] filed," as required by section 614.023(a). However, Guthrie did not specifically raise this point before the Commission or in his appeal from the Commission's decision in the trial court, and it was not the basis for the trial court's judgment reversing the Commission's decision. Guthrie's argument before the Commission and the trial court was instead that Hogan was the complainant and Guthrie did not receive a signed complaint by Hogan.