Opinion issued June 23, 2016



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-15-00631-CV

———————————

**PETER J. PASKE, JR., Appellant**

**V.**

**JOEL FITZGERALD, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CHIEF OF POLICE OF CITY OF MISSOURI CITY, AND THE CITY OF MISSOURI CITY, TEXAS, Appellees**

---

On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Case No. 12-DCV-200899

---

## O P I N I O N

Appellant Peter J. Paske appeals from a summary judgment in favor of appellees, the City of Missouri City and its former chief of police, Joel Fitzgerald. Paske alleges that his rights under Texas Government Code sections 614.021–.023

were violated when Chief Fitzgerald terminated him for insubordination without first presenting him with a signed complaint as a predicate to an internal investigation of his misconduct.

Because there is no evidence of any "complaint" made against Paske that would trigger the application of Chapter 614, we affirm the judgment of the trial court.

## Background

Peter Paske had been a sergeant in the Missouri City police department for several years before Joel Fitzgerald was appointed to be the Department's chief of police. Chief Fitzgerald found Paske to have been insubordinate and disrespectful on several occasions, particularly one incident when he made loud comments at a supervisors' meeting regarding the chief's suggestions for the command staff's uniform. After a finding that Paske had violated departmental policies and deserved discipline, Chief Fitzgerald demoted Paske.

Chief Fitzgerald subsequently issued Paske a performance improvement plan (PIP) which required an independent evaluation through the city's employee assistance program (EAP). The PIP listed several conduct violations stemming from Paske's behavior during the supervisors' meeting, and it also noted that he had become very angry when he was demoted. The PIP required Paske to "follow all lawful orders," to conduct himself "in a manner that does not impair the efficiency

of the department or any employee," and admonished him not to "display pompous, argumentative, or disrespectful behavior to any citizen, fellow officer, or supervisor."

After the initial EAP evaluations, the EAP therapist found several "red flags" for potential steroid use, including weight loss, anger control problems, and high blood pressure. The EAP therapist recommended that Paske take a drug test to check for the use of steroids. The Department agreed to order Paske to undergo testing.

On the day of one of Paske's scheduled EAP appointments, his mother-in-law was supposed to provide care for his three children and three nieces and nephews, two of whom were infants, and all of whom were under the age of 13. That morning, Paske's mother-in-law was struck by a car, and she was taken to the hospital. Paske arranged for a neighbor to take care of the two infants while he attended the EAP appointment, but he and his wife were both uncertain about the neighbor's ability to supervise them. The three remaining children were left by themselves at home.

When Paske arrived for the counseling session, he was told that he needed to take a drug test that day. Paske claims he had no prior notice of the test. He initially agreed to take the test, but then learned that he could not take it at the EAP facility (located within Houston), but would need to go to the department headquarters (in Missouri City).

3

Paske called the assistant chief to explain that he had a family emergency because of the car accident. The assistant chief asked Paske if he was coming to the office, and when he said that he would not, the assistant chief said "Okay." Chief Fitzgerald called Paske back and ordered him to report to the department's headquarters within an hour. Paske said that he could not come in. Paske did not go to headquarters that day, but he arranged for a drug exam issued by an accredited third-party. This exam did not test for steroids, but Paske's results were negative for other substances.

Chief Fitzgerald terminated Paske by a letter that listed several violations of the Department's code of conduct stemming from his failure to report for the drug test. The letter stated that Paske's employment would end "effective on the date of this letter." It did not provide factual background on the specific events that led to his termination. Chief Fitzgerald did not conduct or request an internal affairs investigation before firing Paske. In both his testimony and an email to other members of the Department, Chief Fitzgerald acknowledged that Paske's failure to report to headquarters within the hour for the required drug test was the reason for his termination.

Paske hired counsel who requested an independent review of Chief Fitzgerald's decision by the city manager's office. After this request, the City provided Paske with 671 pages of documents relating to the termination, including

4

the related sections of the Department's policy manual, memoranda regarding the termination decision, and the contents of his personnel file. After reviewing several documents from both parties, the city manager's office concluded that Paske's behavior violated the PIP and EAP requirements, and it upheld Chief Fitzgerald's decision.

The State filed a mandatory report with the Texas Commission on Law Enforcement Officer Standards and Education in which it classified Paske's termination as a "dishonorable discharge." Paske filed suit in the State Office of Administrative Hearings to dispute the dishonorable discharge classification. After a bench trial, the administrative law judge found that Paske disobeyed a lawful direct order, which constituted insubordination under the Missouri City Police Department's rules and policies. The administrative law judge concluded that the Department was not required to amend the dishonorable discharge designation.

Paske then filed claims against both Chief Fitzgerald and the City for race discrimination, retaliation, and violations of the First Amendment in the district court of Fort Bend County. The defendants removed the case to federal court, where Paske amended his claims to allege a violation of state law under Texas Government Code sections 614.021–.023, specifically that Chief Fitzgerald failed to provide him with a signed complaint detailing the factual circumstances leading to his discipline. Paske sought a declaratory judgment that his rights under these statutes had been

violated, along with an injunction against future violations, all economic and compensatory damages suffered both past and future with appropriate prejudgment and post-judgment interest, and attorney's fees.

The federal court granted summary judgment for the defendants on Paske's race discrimination and First Amendment claims, but it severed and remanded the claims under the Government Code. Paske does not appear to have filed an amended version of his live pleadings in the state district court after remand. Paske's amended claims alleging violation of the Government Code therefore are not present in the record before this court, but they are mentioned in the federal district court's summary judgment and remand orders.

Upon return to the Fort Bend County district court, the City and Chief Fitzgerald filed a plea to the jurisdiction and moved for summary judgment with respect to the Chapter 614 claims. The plea to the jurisdiction argued that the city enjoyed governmental immunity from retrospective relief, and that this deprived the trial court of subject-matter jurisdiction. This jurisdictional plea did not address Paske's claims against Chief Fitzgerald in his individual or official capacity.

The motion for summary judgment argued that Chapter 614 does not apply when the chief of an agency discharges a subordinate based on failure to follow a lawful direct order, and that in the alternative, the materials given to Paske satisfied the statute's requirements.

Paske filed a response and a competing motion for summary judgment. His motion sought a declaration that both the City and Chief Fitzgerald in his official capacity failed to perform actions required as procedural safeguards under Chapter 614. Paske also sought reinstatement, costs, and attorney's fees from the City, and reinstatement and back pay from Chief Fitzgerald.

The trial court granted the appellees' motion and plea to the jurisdiction, denied Paske's competing motion, and rendered a final judgment dismissing all claims with prejudice. Paske appealed.

## Analysis

At the outset, appellees contend that we should deny Paske's appeal and affirm the trial court for two procedural and jurisdictional reasons. First, they contend that Paske did not present a record of a petition that asserts a valid claim for declaratory judgment and that this deprives this court of the ability to reverse the lower court's decision because it cannot find error. Second, they argue that governmental immunity deprived both the trial court and this court of subject-matter jurisdiction.

## I.    Adequacy of appellate record

It is an appellant's responsibility to bring a complete record before the court that shows he is entitled to relief. *See Enter. Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 689

(Tex. 1990). The Texas Rules of Appellate Procedure require that unless the parties designate the filings in the record by agreement, the record must include all pleadings on which the trial was held. TEX. R. APP. P. 34.5(a)(1). However, "if a relevant item has been omitted from the clerk's record" the appellate court may direct the trial court clerk to supplement the record to contain the omitted item. TEX. R. APP. P. 34.5(c). This court may also take judicial notice of a relevant fact that is "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." TEX. R. EVID. 201(b); *Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012).

Federal law provides that when a district court lacks subject matter jurisdiction, a "certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case." 28 U.S.C. § 1447(c). A remand thus transfers subject-matter jurisdiction back to the state court on the claims that have been remanded. *See Gonzalez v. Guilbot*, 315 S.W.3d 533, 537–38 (Tex. 2010).

The City and Chief Fitzgerald did not object to the trial court addressing the remanded declaratory-judgment claim; indeed, they asked the trial court to grant summary judgment dismissing that claim. Even if unpleaded, a claim or defense that is tried by express or implied consent of the parties is treated as if it had been raised

8

by the pleadings. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991); *Bednarz v. State*, 142 Tex. 138, 139, 176 S.W.2d 562, 563 (1943). The rules for trial by express or implied consent apply to issues raised in a motion for summary judgment because "it would advance no compelling interest of the parties or of our legal system to reverse a summary judgment simply because of a pleading defect." *Roark*, 813 S.W.2d at 495.

Paske's failure to include the amended petition in the clerk's record is not a procedural defect that precludes us from reviewing the trial court's judgment. The Rules of Appellate Procedure and the Rules of Evidence enable us to supplement the record and take judicial notice of a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." TEX. R. EVID. 201(b); TEX. R. APP. P. 34.5(c); *Coronado*, 372 S.W.3d at 623. Paske's amended complaint is part of the federal district court records, which is an appropriate source for judicial notice. TEX. R. EVID. 201(b); *see Coronado*, 372 S.W.3d at 623. It is also apparent from the remand order and the district court's summary judgment that these claims were properly before the federal district court before remand to the state trial court, and that the remand returned jurisdiction to the trial court.

The City and Chief Fitzgerald failed to object to a variance from Paske's pleadings in their motion for summary judgment. Instead, they directly disputed

Paske's interpretation of Chapter 614, affirmatively seeking a summary judgment on the merits of the declaratory-judgment claim. Paske's requested relief and his grounds for seeking that relief also were repeated in his competing motion for summary judgment. While the timeliness of Paske's summary-judgment response and evidence was challenged in the lower court, those objections were overruled, and they have not been renewed on appeal. It is apparent from the record that these issues were expressly presented to the trial court. *See* TEX. R. CIV. P. 166a(c). Therefore, we conclude that this issue was tried by consent in the state trial court, and we have a sufficient record to perform our appellate review. *See* TEX. R. EVID. 201(b); TEX. R. CIV. P. 166a; *Roark*, 813 S.W.2d at 495.

## II.  Governmental immunity

The City claims it was immune from suit due to governmental immunity and that its plea to the jurisdiction precludes this appeal. Chief Fitzgerald does not claim to share this immunity. Paske argues that because his suit is for a declaratory judgment construing the statute, he could join the City in his action against Chief Fitzgerald. He also asserts that there is no governmental immunity for an ultra vires suit against Chief Fitzgerald in his official capacity.

We review a trial court's ruling on a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). When a fact question is presented by the evidence regarding a jurisdictional issue, the trial

court is precluded from granting summary judgment on a jurisdictional challenge, and fact issues will be resolved by the fact-finder. *See id.* at 227–28. However, if the relevant evidence is undisputed or fails to raise a genuine fact issue regarding the jurisdictional challenge, the trial court should grant summary judgment as a matter of law. *Id.* at 228.

When performing governmental functions, political subdivisions derive governmental immunity from the state's sovereign immunity. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). Sovereign immunity prevents the state from being sued without its consent. *See id.* This immunity has two components: immunity from suit, and immunity from liability. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006); *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001). Immunity from suit defeats a trial court's subject matter jurisdiction, but immunity from liability does not affect a court's jurisdiction to hear a case. *See Texas Dept. of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

A suit for declaratory or injunctive relief against a state official to compel compliance with a statutory provision is not a suit against the State and is not barred by governmental immunity. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009). Such a suit prevents an officer from acting ultra vires, and does "not seek to alter government policy but rather to enforce existing policy." *Id.* at 372. An ultra vires suit must allege and prove that an officer acted without legal authority or

failed to perform a purely ministerial, non-discretionary act. *Id.* at 372. The proper party for an ultra vires suit is the state actor in his official capacity, as the State retains immunity from suit, even if a judgment against the servant in his official capacity will impose liability on the State as a whole. *See id.* at 373.

The Texas Declaratory Judgments Act contains a waiver of immunity from suit. *See* TEX. CIV. PRAC. & REM. CODE § 37.006(b); *Montrose Mgmt. Dist. v. 1620 Hawthorne, Ltd.*, 435 S.W.3d 393, 403 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). If a party joins a governmental entity and seeks a declaration construing a particular ordinance or statute, immunity from suit is waived. *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 633–35 (Tex. 2010). However, governmental immunity will bar an otherwise proper declaratory-judgment claim that will have the ultimate effect of establishing a right to relief against a governmental entity for which the Legislature has not waived immunity. *See Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011).

Paske has alleged that Chief Fitzgerald failed to perform a necessary ministerial act by failing to provide him with a signed complaint pursuant to the Government Code. Paske is therefore seeking a declaratory judgment relating to an ultra vires act. *See Heinrich*, 284 S.W.3d at 372. Because an ultra vires suit is proper against a public servant in his official capacity, the trial court had jurisdiction over Paske's claims against Chief Fitzgerald. *See id.* at 373.

However, Paske's claims against Missouri City are barred by governmental immunity from suit. *See id.* at 373; *First State Bank of DeQueen*, 325 S.W.3d at 633 (suit seeking more than construction of statute still barred by immunity). Rather than merely seeking a declaration to construe the meaning of the statute, Paske is seeking to establish his right to relief against the City for Chief Fitzgerald's ultra vires acts. *See Montrose Mgmt. Dist.*, 435 S.W.3d at 404. Because the City has not waived its governmental immunity from suit, the trial court did not have jurisdiction over Paske's claims against the City. *See Heinrich*, 384 S.W.3d at 373.

We conclude that the City has governmental immunity from suit against Paske's claims. *See Jones*, 8 S.W.3d at 638. We affirm the trial court's dismissal of Paske's claims against the City of Missouri City accordingly. However, the trial court had subject-matter jurisdiction over the declaratory-judgment claims against Chief Fitzgerald in his official capacity for his alleged ultra vires acts. *See Heinrich*, 284 S.W.3d at 372.

## III. Government Code Chapter 614

Finally, we address Government Code sections 614.021–.023 and the trial court's grant of summary judgment in Chief Fitzgerald's favor.

When both parties move for summary judgment and the trial court grants one motion and denies the other, we review both parties' summary-judgment evidence and determine all questions presented. *Valence Operating Co. v. Dorsett*, 164

S.W.3d 656, 661 (Tex. 2005); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). When the trial court's order does not specify the grounds for its summary-judgment ruling, we affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

When construing a statute, we ascertain and give effect to the Legislature's intent as expressed by the language of the statute. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). We use definitions prescribed by the Legislature and give words any technical or particular meaning they have acquired. *Id.* Otherwise, we construe the statute's words according to their plain and common meaning, unless a contrary intention is apparent from the context or such a construction leads to absurd results. *Id.* at 625–26.

Government Code Chapter 614, Subchapter B addresses a category of circumstances in which a "complaint" is made against a peace officer, and it requires a specified procedure to be followed before the head of a local law enforcement agency may "consider" the complaint or take "disciplinary action" on it, including suspension or termination from employment. *See* TEX. GOV'T CODE §§ 614.021–.023. Subchapter B provides as follows:

### § 614.021. Applicability of Subchapter

(a) Except as provided by Subsection (b), this subchapter applies only to a complaint against:

14

(1) a law enforcement officer of the State of Texas . . .

(b) This subchapter does not apply to a peace officer or fire fighter appointed or employed by a political subdivision that is covered by a meet and confer or collective bargaining agreement under Chapter 143 or 174, Local Government Code, if that agreement includes provisions relating to the investigation of, and disciplinary action resulting from, a complaint against a peace officer or fire fighter, as applicable.

## § 614.022 Complaint to Be in Writing and Signed by Complainant

To be considered by the head of a state agency or by the head of a fire department or local law enforcement agency, the complaint must be:

(1) in writing; and

(2) signed by the person making the complaint.

## § 614.023 Copy of Complaint to Be Given to Officer or Employee

(a) A copy of a signed complaint against a law enforcement officer . . . shall be given to the officer or employee within a reasonable time after the complaint is filed.

(b) Disciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the officer or employee.

(c) In addition to the requirement of Subsection (b), the officer or employee may not be indefinitely suspended or terminated from employment based on the subject matter of the complaint unless:

(1) the complaint is investigated; and

(2) there is evidence to prove the allegation of misconduct.

Opinions applying this statute have observed that it provides a measure of procedural protection for law enforcement officers, protecting them from adverse employment action based on unsubstantiated accusations. *See, e.g.*, *Turner v. Perry*, 278 S.W.3d 806, 823 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

Chief Fitzgerald argues that the trial court properly granted him summary judgment because there was no "complaint" in this case, and instead he acted upon employee misconduct that he personally witnessed in his official role as chief. He contends that the requirements of Subchapter B would be superfluous when he is acting based upon his personal observations.

Subchapter B requires a "complaint" against a law enforcement officer to be made in writing and signed by the complainant before it can be considered as a basis for disciplinary action, but it does not define what constitutes a "complaint." *See* TEX. GOV'T CODE § 614.021–.023. A "complaint" is commonly defined as an "expression of grievance or injustice suffered" or "a formal allegation against a party." *E.g.*, *Complaint*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th ed., 1993); *Complaint*, THE NEW SHORTER OXFORD ENGLISH DICTIONARY (1993). These definitions both require some form of communication—one party expressing dissatisfaction or making the allegation against the other.

A divided panel of the Third Court of Appeals in *Treadway v. Holder*, 309 S.W.3d 780 (Tex. App.—Austin 2010, pet. denied), considered this language when

16

determining whether the term "complaint" in section 614.023 includes internal complaints by other officers. *See id.* at 783–84. The appellant in *Treadway* was terminated after a lieutenant received a complaint from a shift sergeant stating that the appellant had failed to comply with a requirement that she meet weekly with a trainee. *Id.* at 781. The court reasoned that although the allegations of misconduct in that case were made by Treadway's supervisors, those allegations were still a "complaint" for the purposes of the statute. *See id.* at 784–85. The court specifically determined that "the legislature did not intend the term 'complaint' to be limited to external citizen complaints" and stated that the "fact that these allegations were made by Treadway's supervisors [was] immaterial." *Id.* at 784. The court concluded that Treadway's "ability to investigate or defend against" the complaint was harmed by the failure to comply with Chapter 614, and it reversed the summary judgment that had been granted in favor of the county. *Id.* at 785–86.

More recently this court, in *Staff v. Wied*, 470 S.W.3d 251 (Tex. App.—Houston [1st Dist.] 2015), *pet. granted*, No. 15-0912 (Tex. June 17, 2016), referenced the *Treadway* majority's reasoning and quoted its analysis with approval. *See id.* at 260. *Staff* concerned a complaint about a deputy sheriff that was brought by a county attorney's office before being investigated by the Sheriff's Department. *Id.* at 254. The Sheriff's Department gave the deputy a "Performance Deficiency Notice" that stated that his termination was "effective immediately." *Id.* A panel of

this court concluded that a letter from the county attorney raising concerns about the deputy's job performance qualified as a "complaint" for purposes of Chapter 614, and the "Performance Deficiency Notice" given to the deputy did not satisfy Chapter 614's requirement that he be provided a signed written copy of the complaint, since it came from the Sheriff's Department rather than the county attorney's office, which the *Staff* opinion characterized as the "victim" of the deputy's misconduct. *Id.* at 260-61.

Paske relies on both *Treadway* and *Staff* to support his claim, but they are factually distinguishable. In both of those cases, there was some form of initiating allegation, characterized in both cases as a "complaint," received before the supervisor made a final decision to terminate the employee. *See Staff*, 470 S.W.3d at 253; *Treadway*, 309 S.W.3d at 781. In contrast, the supervisor in this case himself observed the misconduct and made the decision to terminate Paske. Unlike the circumstances in *Staff*, the letter sent to Paske was a disciplinary action, rather than a "formal allegation of misconduct." *See Staff*, 470 S.W.3d at 261.

Section 614.022 specifies a procedure for the consideration of a "complaint," but that procedure is not imposed as a precondition to every adverse employment action that may be taken against a law enforcement officer. TEX. GOV'T CODE § 614.022. To conclude otherwise would require a department chief to write, sign, and deliver to an employee an account of his personal observations of

18

misconduct before even considering any form of disciplinary action, a rule that is not compelled by a natural reading of the statute. *See id.*

Subchapter B addresses procedures applicable to a "complaint." *See id.* As cases applying this statute have demonstrated, a "complaint" may originate from either outside a law enforcement agency or from within it. *See Staff*, 470 S.W.3d at 261; *Treadway*, 309 S.W.3d at 784. But every termination of a law enforcement officer does not necessarily have has its genesis in a "complaint." If Subchapter B were meant to apply to every termination of a law enforcement officer, the Legislature presumably would have said so directly. We conclude, based on the facts of this case, that there was no "complaint" leading to Paske's termination, and Subchapter B is therefore inapplicable. *See* Tex. Gov't Code § 614.021–023. Because there was no statutory violation, we overrule Paske's sole issue and affirm the trial court's grant of summary judgment in favor of Chief Fitzgerald. *See Knott*, 128 S.W.3d at 216.

## Conclusion

We affirm the trial court's judgment.

Michael Massengale
Justice

Panel consists of Justices Higley, Bland, and Massengale.

19